ASSOCIATES FINANCIAL SERVICES OF AMERICA,
INC. *v.* SAMUEL P. SORENSEN ET AL.
(AC 16187)

Heiman, Schaller and Spear, Js.

Argued May 30—officially released September 16, 1997

*Ronald D. Japha,* with whom, on the brief, were
*Abraham I. Gordon* and *Richard S. Scalo,* for the appellant (substitute plaintiff).

*Beecher A. Larson*, with whom was *Robert Solari*, for the appellee (defendant Northern State Financial, LLC).

*Opinion*

SCHALLER, J. In this foreclosure action, the substitute plaintiff, Ford Consumer Finance Company, Inc. (Ford Finance),[1] appeals from the judgment rendered following the trial court's granting of summary judgment in favor of the defendant Northern State Financial, LLC (Northern). Ford Finance claims that (1) General Statutes (Rev. to 1993) § 12-157[2] is unconstitutional on

---

[1] Ford Finance was substituted as the plaintiff on May 6, 1996, because it is the current owner and holder of the mortgage.

[2] General Statutes (Rev. to 1993) § 12-157 provides: "When a collector levies one or more tax warrants on real estate, he shall prepare duplicate notices thereof, containing the name of the taxpayer, the amount of the tax or taxes, a description of the property levied upon and the time and place of sale, one of which he shall post on a signpost in the town where such real estate is situated, if any, or at some other exterior place near the office of the town clerk, which is nearest thereto and the other he shall file in the town clerk's office of such town, and such town clerk shall record and index the same as a part of the land records of such town. Such posting and filing shall be done not more than ten and not less than nine weeks before the time of sale and shall constitute a legal levy of such warrant or warrants upon the real estate therein referred to. Such collector shall also publish a similar notice for three successive weeks, at least once a week, in a newspaper published in such town, if any, otherwise in a newspaper published in the state having a general circulation in such town, beginning not more than ten and not less than nine weeks before the time of sale. He shall also send by mail, postage prepaid, to the delinquent taxpayer and to each mortgagee, lien holder and other record encumbrancer whose interest in such property will be affected by such sale, a similar notice at least four weeks before such sale, addressed to his place of residence, if known to the collector, otherwise to his place of residence as given in the records of such town. If such collector finds it desirable, he may adjourn such sale from time to time by causing public notice of such adjournment and the time and place of such adjourned sale to be given at the time and place mentioned in such notices. At the time and place mentioned in such notices, or, if such sale is adjourned, at the time and place specified at the time of adjournment as aforesaid, such collector (a) may sell at public auction to a bidder enough of such estate to pay the taxes with the interest, fees and other charges allowed by law or (b) may sell such estate to his municipality if there has been no bidder or the amount bid is insufficient to pay the amount due. Within one week after such sale, the collector shall execute a

its face because it fails to provide proper notice and an opportunity to be heard,[3] and (2) the trial court improperly granted summary judgment. We affirm the judgment of the trial court.

The record discloses the following facts and procedural history. By way of a note dated April 13, 1990, Samuel P. Sorensen promised to pay to the order of the plaintiff, Associates Financial Services of America, Inc. (Associates), the sum of $100,537.42 plus interest. To secure the note, Sorensen mortgaged a single-family residence at 45 Glendale Avenue, Bridgeport. For several years thereafter, Sorensen failed to pay the property taxes owed to the city of Bridgeport. On June 29, 1993, the city auctioned the Glendale Avenue property at a tax sale pursuant to § 12-157. Robert Solari and Beecher Larson purchased the property and obtained title via a tax collector's deed. No one redeemed the property and

deed thereof to the purchaser or to the municipality conducting the sale and shall lodge the same in the office of the town clerk of such town, where it shall remain unrecorded one year from the date of such sale, and, if the delinquent taxpayer or any person interested in the estate, within such time, pays or tenders to the purchaser or to such municipality, as the case may be, the amount paid by him, with interest at the rate of (1) twelve per cent per annum from the date of such sale, if such sale occurred prior to July 1, 1981, (2) fifteen per cent per annum from the date of such sale if such sale occurs on July 1, 1981, or thereafter but not later than June 30, 1982, or (3) eighteen per cent per annum from the date of such sale if such sale occurs on or after July 1, 1982, such deed shall be delivered to the person paying or tendering the money who, if not the person whose primary duty it was to pay the tax, shall have a claim against the person whose primary duty it was to pay such tax for the amount so paid, and may add the same to any claim for which he has security upon the premises sold. If the purchase money and interest are not paid within such year, the deed shall be recorded and have full effect. Any municipality holding a lien for unpaid taxes on real estate, other than the municipality conducting the sale, may purchase such estate at a tax sale."

[3] In its brief, Ford Finance also claims that a tax sale pursuant to § 12-157 violates the takings clauses of the federal and state constitutions and impairs its contractual rights under article one, § 10, of the federal constitution. Because neither Associates nor Ford Finance raised these claims at trial, we decline to review them on appeal.

the tax collector's deed was recorded on June 30, 1994. Solari and Larson conveyed the property to Northern on July 11, 1994, by way of a quitclaim deed.

Sorensen ceased making payments on the note on May 1, 1994. Associates filed a substitute complaint on February 22, 1995, against Sorensen and Northern, seeking to foreclose its mortgage on the Glendale Avenue property.[4] Northern moved for summary judgment, arguing that it was entitled to judgment as a matter of law because the conveyance of the premises through a tax sale extinguished Associates' mortgage. The trial court granted Northern's motion and this appeal followed.

I

Ford Finance first claims that § 12-157 is unconstitutional because it fails to provide proper notice and an opportunity to be heard in violation of the procedural due process protections provided in the fourteenth amendment to the federal constitution.[5] We disagree.

"In order to prevail on its procedural due process claim, the plaintiff must show that (1) its property interest is cognizable under the due process clause, (2) it has been deprived of its property interest, and (3) the

___

[4] Associates' original complaint, filed on November 16, 1994, was stricken by the trial court, *Thim, J.*, for failing to state a claim on which relief can be granted because it contained a paragraph alleging that Solari and Larson obtained title to the subject property via a tax collector's deed. The trial court held that Associates' mortgage was extinguished by the tax sale, and, as such, Associates failed to allege a cause of action. Thereafter, Associates amended its complaint to omit any reference to a tax collector's deed.

[5] Ford Finance also claims a violation of article first, § 8, of the Connecticut constitution. Associates has failed to provide a separate and distinct analysis of an independent claim under the Connecticut constitution. We have repeatedly held that we will not engage in a separate constitutional analysis where the parties do not provide us with such analysis. See *State* v. *Perez*, 218 Conn. 714, 723, 591 A.2d 119 (1991); *State* v. *Russell*, 25 Conn. App. 243, 252, 594 A.2d 1000, cert. denied, 220 Conn. 911, 597 A.2d 338 (1991).

deprivation of the property interest has occurred without due process of law." *Dutch Point Credit Union, Inc.* v. *Caron Auto Works, Inc.*, 36 Conn. App. 123, 130, 648 A.2d 882 (1994). Here, the mortgagee possessed a substantial property interest in the subject property. Moreover, because the sale of the property resulted in the passage of title, free of all liens on the property, the mortgagee was deprived of its property interest. We conclude, however, that the deprivation of the mortgagee's property interest did not occur without due process of law.

## A

We first address Ford Finance's claim that the statutory scheme is unconstitutional because it fails to provide proper notice. In *Mennonite Board of Missions* v. *Adams*, 462 U.S. 791, 795, 103 S. Ct. 2706, 77 L. Ed. 2d 180 (1983), the United States Supreme Court held that "prior to an action which will affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment, a State must provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (Internal quotation marks omitted.) In *Mennonite Board of Missions*, the Supreme Court found that a state statute that allowed for the sale of real property where the payment of taxes was delinquent after a specified period of time was unconstitutional. The statute in that case required only notice by publication and notice to the owner by mail. The statute did not provide for notice to lienholders and, as a result, property could be sold free of all liens and encumbrances without notice to a mortgagee. Unlike the statute in *Mennonite Board of Missions*, § 12-157 requires that notice be posted on a signpost in the town where the real estate is located, that the town clerk record notice on the land records, that notice be published in

a local newspaper for at least three consecutive weeks, and that notice be sent by mail to the owner, mortgagee, lienholder, or any other party having an interest in the property. We conclude that the notice provided by § 12-157 is reasonably calculated to apprise all interested parties of the tax sale and is, therefore, proper.

B

We next address Ford Finance's claims that § 12-157 is unconstitutional because it fails to provide for a hearing or judicial review of the valuation and sale. Although our appellate courts have never addressed the constitutionality of § 12-157, that issue has been raised and addressed in the Superior Court. *Pace Motor Lines* v. *Biagiarelli*, Superior Court, judicial district of Fairfield, Docket No. 318117S (June 24, 1996) (*Levin, J.*).[6] In *Pace Motor Lines*, the court offered the following analysis that we find to be persuasive: "[T]he procedural due process requirement for a hearing applies only where a governmental body or official has engaged, or should have engaged, in fact-finding. *Mathews* v. *Eldridge*, 424 U.S. 319, 344, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (procedural due process rules shaped by risk of error inherent in truthfinding process). In a tax sale pursuant to General Statutes § 12-157, the tax collector does not find facts, other than the fact of nonpayment of taxes. See W. Legg, 'Tax Sales and the Constitution,' 20 Okla. L. Rev. 365, 374 (1967). He merely follows the statutory procedure laid out for the sale of real property. The power to sell land for delinquent taxes is strictly

---

[6] In *Pace Motor Lines*, an unpublished decision, the plaintiff claimed that § 12-157 violates procedural due process because it fails to provide for judicial review of a commercially reasonable tax sale. The court concluded that the plaintiff did not have a substantive property right to a commercially reasonable tax sale and, therefore, could not prove its claim that the statute violated procedural due process. *Pace Motor Lines* v. *Biagiarelli*, supra, Superior Court, Docket No. 318117S. In dicta, the trial court engaged in a procedural due process analysis.

construed; the tax collector must substantially, if not strictly, comply with all statutory provisions. 85 C.J.S., Taxation §§ 745, 746, 798, 799 (1954); 72 Am. Jur. 2d, State and Local Taxation § 931 (1974). Where a governmental official or body executes a ministerial duty, there is no need for a hearing. *Connecticut Health Facilities* v. *Zoning Board of Appeals*, 29 Conn. App. 1, 6–7, 613 A.2d 1358 (1992). Indeed, in connection with the tax sale, the tax collector is vested with no discretion save for the authority, albeit 'for any reason,' to 'adjourn such sale from time to time . . . .' General Statutes (Rev. to 1993) § 12-157. That, however, is merely incidental to the ministerial duty to conduct a fair sale in a responsible manner, in accordance with the dictates of *Townsend Savings Bank* v. *Todd*, 47 Conn. 190 [1879]. See also *Blossom* v. *Railroad Co.*, 70 U.S. (3 Wall.) 196, 209, 18 L. Ed. 43 (1865); *Weinfield* v. *Cocke*, 60 S.W.2d 842, 844 (Tex. Civ. App. 1933), aff'd, 127 Tex. 353, 92 S.W.2d 1017 (1936); *Mower* v. *Bohmke*, 9 Utah 2d 52, 55, 337 P.2d 429 (1959).

"Even if the tax collector were to misuse his authority and to subvert the fairness of the tax sale, that would not render General Statutes § 12-157 violative of procedural due process. Rather, the plaintiffs' remedy would be a common-law action, such as an action for a declaratory judgment and injunction. General Statutes § 52-483; see also *Newton* v. *Schott*, 87 Conn. 142, 87 A. 271 (1913) (action to set aside tax levy and sale of real estate and deed); *Townsend Savings Bank* v. *Todd*, supra, 47 Conn. 190 (action for ejectment); see also *Curtis Building Co.* v. *Tunstall*, 36 Pa. Commw. 233, 236 n.2, 387 A.2d 1370 (1978) (if statutory remedy inadequate, action in equity to enjoin tax sale would lie; statute not unconstitutional). As the United States Supreme Court has observed, 'there is an important difference between a challenge to an established state procedure as lacking in due process and a property damage claim arising

out of the misconduct of state officers. In the former situation the facts satisfy the most literal reading of the Fourteenth Amendment's prohibition against "State" deprivations of property; in the latter situation, however, even though there is action "under color of" state law sufficient to bring the amendment into play, the state action is not necessarily complete. For in a case such as this the law of [the state] provides, in substance, that the plaintiff is entitled to be made whole for any loss of property occasioned by the unauthorized conduct of [a state official].' *Parratt* v. *Taylor*, 451 U.S. 527, 542, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981), quoting then Judge, later Justice, Stevens writing for the panel in *Bonner* v. *Coughlin*, 517 F.2d 1311, 1319 (7th Cir. 1975), modified en banc, 545 F.2d 565 (7th Cir. 1976), cert. denied, 435 U.S. 932, 98 S. Ct. 1507, 55 L. Ed. 2d 529 (1978)." *Pace Motor Lines* v. *Biagiarelli*, supra, Superior Court, Docket No. 318117S.

We conclude that § 12-157 does not violate due process because it fails to provide for a hearing or judicial review.

II

Ford Finance next claims that the trial court improperly granted summary judgment in favor of Northern because the trial court improperly failed to consider certain allegations contained in the affidavit of Associates' vice president. We are unpersuaded.

"The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 744–45, 660 A.2d 810 (1995). In deciding a

motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Id., 745. The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law; *D.H.R. Construction Co.* v. *Donnelly*, 180 Conn. 430, 434, 429 A.2d 908 (1980); and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book § 381. . . . *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 105, 639 A.2d 507 (1994)." (Internal quotation marks omitted.) *Doty* v. *Mucci*, 238 Conn. 800, 805–806, 679 A.2d 945 (1996); *Thompson & Peck, Inc.* v. *Division Drywall, Inc.*, 241 Conn. 370, 374–75, 654 A.2d 748 (1997).

"Although the party seeking summary judgment has the burden of showing the nonexistence of an material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Citations omitted; internal quotation marks omitted.) *Barrett* v. *Danbury Hospital*, 232 Conn. 242, 255, 654 A.2d 748 (1995).

General Statutes (Rev. to 1993) § 12-159 provides in relevant part: "Any deed, or the certified copy of the record of any deed, purporting to be executed by a tax collector . . . shall be prima facie evidence of a valid and unencumbered title in the grantee to the premises . . . . No act done or omitted relative to the assessment

or collection of a tax, including everything connected therewith . . . shall in any way affect or impair . . . the validity of such sale, unless the person contesting such validity shows that . . . the collector neglected to mail to him the notice by law required, or to those with whom he is in privity of title, and who have a right to notice of such sale, *and* that he or they in fact did not know of such sale within one year after it was made, provided such property was by law liable to be sold to satisfy such tax . . . ." (Emphasis added.) Thus, unless Ford Finance can show that (1) the tax collector failed to mail Associates notice of the sale *and* that Associates did not have actual notice of the sale one year after it was made, or (2) that the property was not "by law liable to be sold to satisfy the tax," then Northern's proffer of the tax collector's deed is prima facie evidence of its valid and unencumbered title to the subject property.

In support of its motion for summary judgment, Northern attached a certified copy of the tax collector's deed as prima facie evidence of its valid and unencumbered title to the subject property. Associates filed an objection, claiming that the tax collector's deed was invalid because the city failed to comply with the statutory prerequisites for a tax sale. The motion in opposition was accompanied by the affidavit of G. J. Hortemiller, Associates' vice president. In his affidavit, Hortemiller alleged that the tax sale was invalid because (1) the tax collector did not make a proper demand and levy on Sorensen, the owner of the property, pursuant to General Statutes (Rev. to 1993) § 12-155,[7] (2) the tax

[7] General Statutes (Rev. to 1993) § 12-155 provides in relevant part: "If any person fails to pay any tax, the collector . . . shall make personal demand of him therefor or leave written demand of him therefor or leave written demand at his usual place of abode or deposit in some post office a written demand for such tax, postage prepaid, addressed to such person at his last-known place of residence. After demand has been made in the manner above provided, the collector may levy for such tax on any goods

collector posted notice less than nine weeks before the sale in violation of § 12-157, and (3) the tax collector failed to send Associates timely notice of the sale in accordance with § 12-157.

The trial court found that Associates failed to establish a genuine issue of material fact regarding the validity of the tax sale and the ensuing deed because Hortemiller, the affiant, failed to provide evidence that he had personal knowledge that the tax collector failed to make a proper demand and levy on Sorensen or that the posted notice was untimely. The trial court did state that because Hortemiller is Associates' vice president, it was "possible that he had personal knowledge of when notice was received by Associates." Nevertheless, the court granted summary judgment in favor of Northern because Associates failed to offer evidence that it did not have knowledge of the sale within one year after it was made[8] and accordingly, could not overcome the prima facie evidence of unencumbered title.[9]

Practice Book § 381 provides in relevant part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . ." "[A]ffadavits made by corporate

---

and chattels of such person and post and sell them in the manner provided in case of executions; but, if no such goods or chattels belonging to such person can be found after reasonable search by the collector, he may enforce by levy and sale any lien upon real estate for such taxes, or he may levy upon and sell such interest of such person in any real estate as exists at the date of the levy."

[8] Associates conceded that it received actual notice within one year of the sale at a pretrial hearing on November 17, 1995, and again in response to Northern's request for admissions.

[9] In its brief, Ford Finance claims that the trial court refused to consider any facts that Associates offered in an attempt to rebut Northern's prima facie case. This claim is clearly without merit. The trial court declined to consider portions of Hortemiller's affidavit only because it determined that the affidavit was defective.

officers and other parties must aver or affirmatively show personal knowledge of the matters stated therein." *Evans Products Co.* v. *Clinton Building Supply, Inc.*, 174 Conn. 512, 515, 391 A.2d 157 (1978). "If the affidavits and other supporting documents are inadequate, then the court is justified in granting the summary judgment, assuming that the movant has met his burden of proof." *New Haven Tobacco Co.* v. *O'Brien*, 37 Conn. Sup. 815, 819, 438 A.2d 440 (1981).

Ford Finance claims that Northern withdrew its objection to Hortemiller's affidavit, and, as a result, the court improperly acted on its own to exclude those allegations. Even if we assume arguendo that Northern withdrew its objection, the trial court properly made an independent legal evaluation of the sufficiency of the Hortemiller affidavit. See C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 3.2.1 ("judges . . . have the inherent power to . . . exclude inadmissible evidence whether or not objected to by counsel").

Ford Finance also claims that Hortemiller alleged personal knowledge in the affidavit. The Hortemiller affidavit does contain a statement that "I [Hortemiller] am fully familiar with the facts and circumstances of the case at bar." That assertion, however, does not amount to an adequate averment of personal knowledge; rather, it merely alleges familiarity with the case file, without mention of how or where the knowledge was obtained.

Finally, Ford Finance claims that Associates affirmatively showed that Hortemiller possessed the requisite personal knowledge at a hearing on Northern's motion for summary judgment. At the hearing, Associates argued that, because Hortemiller heard or read the deposition testimony of Anne Phillips, the city's tax attorney, in a companion case, he had personal knowledge of the allegations. That argument is without merit.

Our courts have repeatedly held that hearsay statements are inadmissible evidence pursuant to Practice Book § 381 and that a mere assertion of fact is insufficient to establish the existence of a material fact. See *Sheridan* v. *Board of Education*, 20 Conn. App. 231, 240, 565 A.2d 882 (1989).

We conclude that Associates failed to show that Hortemiller had personal knowledge of whether the city made a proper demand and levy, and the timeliness of the posting. Accordingly, the trial court properly declined to consider those allegations in ruling on Northern's motion for summary judgment.

We next examine the record to determine whether the trial court's granting of summary judgment was proper. Northern, by attaching a certified copy of the tax collector's deed, has met its burden of proving that it has unencumbered title to the property. We have concluded that the trial court declined to consider Hortemiller's allegations concerning the deficiency of the levy and demand and that the posted notice was untimely. Accordingly, because § 12-157 required Associates to prove that it had neither notice nor actual notice, and because Associates conceded that it received actual notice; see footnote 8; Ford Finance has failed to provide the evidentiary foundation necessary to demonstrate the existence of a genuine issue of material fact concerning the validity of the tax sale or the subsequent deed. We conclude that the trial court properly granted Northern's motion for summary judgment.

The judgment is affirmed.

In this opinion the other judges concurred.