[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT #108
The defendants have filed a Motion for Summary Judgment in this defamation action.
The plaintiffs in this case are Michael Perugini and Sensual Fashions, Inc. Michael Perugini is the sole shareholder and owner of Sensual Fashions, Inc. Sensual Fashions, Inc. is the sole owner of the Sportspaige Restaurant, which was located in Manchester, Connecticut. The defendants are the Journal Publishing Company, Inc., the publisher of the Journal Inquirer,
Chris Powell, the editor of the Journal Inquirer, and Doreen Guarino, a reporter who covers the Manchester Police Department for the Journal Inquirer and who wrote the article in issue in this case.
On March 5, 1997, the defendants published a newspaper article in the Journal Inquirer regarding the arrest of Dale Mikoleit for procuring alcohol for a minor boy at the plaintiffs' restaurant, Sportspaige. The headline of the article read "Man Charged, Restaurant Cited In Underage Drinking Incident." The article discussed the incident at the Sportspaige Restaurant. The article was based upon the police report and a telephone interview that Guarino had with Perugini.
The plaintiffs, Michael Perugini and Sensual Fashions, Inc. commenced this action by service of the complaint on February 23, 1998. In count one of a two count complaint, the plaintiffs allege that the article published by the defendants on March 5, 1997 was libelous, specifically that "[t]he headline and article would, to a person of common and reasonable understanding . . . implicate Perugini and Sportspaige with illegal, unethical and unprofessional conduct, as the article clearly leads to the conclusion that Sportspaige was responsible for the service of alcohol to the minor in question. Specifically, the article alleges that a "local man" was arrested, in a manner which leads the reader to believe that he may have been an employee or representative of Sportspaige." (Complaint, p. 4, ¶ 9) In addition, the complaint alleges that the "publication was false, malicious, misleading and injurious to the plaintiffs as it charged illegal and improper conduct as well as a lack of skill or integrity in the professional and/or business conduct of the plaintiffs Perugini and Sportspaige." (Complaint, p. 4, ¶ 11) The second count of the complaint alleges on behalf of Perugini, CT Page 2476 individually, damages for negligent infliction of emotional distress related to the alleged libelous article.
The defendants filed an answer and special defenses on July 13, 1998. In their first special defense, the defendants allege that they are protected by the privilege of fair report because the publication or republication of the police report was a matter of public concern and was an accurate and complete recounting or a fair abridgment of the contents of the police report. (Defendants' Answer, p. 4.) The second special defense alleges that each and every factual statement in the article is true. (Defendants' Answer, p. 5.)
On July 20, 1998, the defendants filed a motion for summary judgment and supporting memorandum with affidavits and exhibits. The defendants argue that they are entitled to summary judgment because (1) the plaintiffs' claim of libel by implication fails as a matter of law and (2) the privilege of fair report precludes liability. The plaintiffs filed an objection and supporting memorandum with affidavit and exhibits on November 6, 1998. Oral arguments were heard at short calendar on November 9, 1998.
A. Standard for Summary Judgment
"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . .Scrapchansky v. Plainfield, 226 Conn. 446, 450, 627 A.2d 1329
(1993). "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . ." (Internal quotation marks omitted.) Maffucci v.Royal Park Ltd. Partnership, 243 Conn. 552, 555, 707 A.2d 15
(1998). "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) Hammer v. Lumberman'sMutual Casualty Co., 214 Conn. 573, 578, 573 A.2d 699 (1990). "Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Alterations in original; internal CT Page 2477 quotation marks omitted.) Home Insurance Co. v. Aetna Life Casualty Co., 235 Conn. 185, 202, 663 A.2d 1001 (1995). See also, Associates Financial Services of America, Inc. v. Sorenson,46 Conn. App. 721, 732, 700 A.2d 107 (1997). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party[.]" (Internal quotation marks omitted.) Hertz Corp. v. FederalInsurance Co., 245 Conn. 374, 381, ___ A.2d ___ (1998). "A defendant's motion for summary judgment is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact."Perille v. Raybestos-Manhattan-Europe. Inc., 196 Conn. 529, 543,494 A.2d 555 (1985).
B. Count One
The defendants argue that the plaintiffs' specific claim of libel by implication should fail as a matter of law because no reasonable reader could draw the implication alleged in the complaint that the "local man" referred to in the article was an employee or representative of Sportspaige. (Defendants' Memorandum In Support of Motion For Summary Judgment, p. 5-6.) In support of their argument, the defendants attached a copy of the affidavit of Doreen Guarino, the reporter who wrote the article in issue. In her affidavit, Ms. Guarino avers that the article did not suggest that the "local man" was an employee or in any way associated with or a representative of the Sportspaige Restaurant and that the article did not suggest that Sportspaige was responsible for the incident underlying the "local man's" arrest. (Affidavit of Doreen Guarino, ¶ 12.) Since the affidavit is of a self-serving nature and cannot reflect the public's perception, it was not a factor in the court's decision.
"Before a party will be held liable for libel, there must be an unprivileged publication of a false and defamatory statement."Strada v. Connecticut Newspapers Inc., 193 Conn. 313, 316,477 A.2d 1005 (1984). "A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Lizotte v. Welker,45 Conn. Sup. 217, 221, 709 A.2d 50 (1996). "If a written libel is expressed in terms so clear and unambiguous that no circumstances are required to make it clearer than it is of itself, the question of libel or no libel is one of law to be determined by the court." (Emphasis added.) Carey v. Woodruff, 89 Conn. 304, CT Page 2478 308, 94 A. 281 (1915).
"Words claiming to be [defamatory] are to be given their natural and ordinary meaning and to be understood in the sense which hearers of common and reasonable understanding would ascribe to them. . . ." Ventresca v. Kissner, 105 Conn. 533,535, 136 A. 90 (1927). "Words which charge a crime are only actionable in themselves when they charge a crime which involves moral turpitude, or subjects the offender to infamous punishment." Yakavicze v. Valentukevicious, 84 Conn. 350, 353,80 A. 94 (1911).
Individual statements which may not be defamatory on their own may, when combined, create a defamatory implication that is injurious to a plaintiff. Herbert v. Lando, 781 F.2d 298 (2nd
Cir. 1986). "The essence of a cause of action for libel by omission or innuendo is an allegation by the plaintiff that, although the statement by the defendant is true, the defendant knew of the existence of additional material facts which, if reported, would have changed the tone of the article.'" Handlerv. Arends, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 527732 (March 1, 1995, Sheldon,
J.) "Innuendo or inference may result merely from the tone or slant' of an article, or innuendo or inference may also result from the failure to present the whole picture." Strada v.Connecticut Newspapers, Inc., supra, 193 Conn. 322. "[T]ruthful statements which carry a defamatory implication can be actionable . . . in the case of private citizens and private affairs." Strada v. Connecticut Newspapers, Inc., supra,193 Conn. 324. "A publisher [however] cannot be responsible for every strained interpretation that a plaintiff might attribute to its words." Id., 325. "The author's job is not simply to copy statements verbatim, but to interpret and rework them into the whole." (Internal quotation marks omitted.) Id., 320-21. "[A]ny deviations from or embellishments upon the information obtained from the primary sources relied upon [may be considered] minuscule and [attributable] to the leeway afforded an author who attempts to recount and popularize an . . . event" and therefore are unactionable. Id., 322.
In the present case, the headline of the article in issue reads "Man Charged, Restaurant Cited In Underage Drinking Incident." Following the headline, the first four paragraphs of the article provide the who, what, when, where and why of the story. These paragraphs state that the police arrested a "local CT Page 2479 man," Dale Mikoleit, on March 4, 1997 for procuring liquor for a minor based on a report from a local school teacher that he saw a 13-year-old student drinking beer and a shot at the Sportspaige Restaurant in January. The first paragraph also states that the police were referring the restaurant "to the state Liquor Control Commission for possible disciplinary action." The following paragraphs continue by telling the story from statements made by Perugini and statements made in the police report regarding the incident at the restaurant.
The plaintiff alleges that the use of the term "local man" creates an impression that Mikoleit was an employee or representative of the restaurant and therefore implies that the restaurant served alcohol to a minor. The article, however, clearly and unambiguously states that Mikoleit was arrested for "procuring liquor for a minor" at the restaurant. The only reference to a connection between Mikoleit and the Sportspaige Restaurant was that the minor boy's mother worked at the restaurant as a waitress and Mikoleit was with the boy at the restaurant to pick the mother up. The article in no way states or implies that the restaurant was responsible for serving alcohol to the boy. On the contrary, the article refers to statements given by Perugini that the restaurant did not serve the boy any liquor and that the liquor was given to the boy by Mikoleit. Further, the natural and ordinary meaning of the words "local man" would not to the reasonable reader imply that Mikoleit was an employee or representative of Sportspaige. The tone or slant of the article does not imply that Sportspaige was responsible for serving liquor to a minor. The article therefore does not imply that Sportspaige acted illegally, immorally, unethically or unprofessionally. The specific implication alleged fails as a matter of law.
In addition, the plaintiff argues that the word "cited" in the headline implies that the restaurant was "reprimanded by the Manchester Police Department for illegal, improper, unethical, and/or immoral actions."[1] (Affidavit of Michael Perugini, p. 3, ¶ 10.) The defendants argue that one of the dictionary definitions of the word "cite" means "to call to someone's attention" and that is what the police did by referring the matter to the Liquor Control Commission. The defendants argue that the use of the term "cited" was an accurate description of what happened and therefore summary judgment should be granted in their favor. CT Page 2480
"Particular words or statements must [however] be viewed, not in isolation, but in terms of the context of the entire communication. . . . Inaccurate headlines are not libelous if they are correctly clarified by the text of an article." (Citation omitted.) Woodcock v. Journal Publishing Co.,230 Conn. 525, 554, 646 A.2d 92 (1994) (Berdon, J., concurring). See also, Contemporary Mission. Inc. v. N.Y. Times Co.,842 F.2d 612 (2nd Cir. 1988), cert. denied, sub nom. O'Reilly v. New YorkTimes Co., 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988) (article's subhead, entitled "Ordinations Called Forged," were not libelous although misleading because the text immediately following it clarified the subheading). The word "cited" as used in the headline is not libelous by itself, but must be read with the text following it. When read with the text following the headline, the reader of the article in issue is immediately informed in the first paragraph that the police were referring Sportspaige to the Liquor Control Commission. There is no reference in the article that would lead a reasonable reader to believe that Sportspaige was charged by the Manchester police with any illegal activity. The headline when read with the text immediately following it clearly and unambiguously states that Sportspaige was being "referred" to the Liquor Control Commission, for not being charged with illegal activity by the Manchester police. A reasonable reader would not understand the article as implying that Sportspaige had acted illegally, immorally, unethically or unprofessionally by serving a minor. This libelous implication fails as a matter of law.
As a matter of law the article is not libelous because the article does not imply that the plaintiffs acted illegally, immorally, unethically or unprofessionally in the incident in which Mikoleit procured alcohol for the minor boy. The Motion for Summary Judgment is granted as to count one.
Alternatively, the defendants argued that they are protected by the privilege of fair report. The plaintiffs argued that although the defendants may have been privileged to publish the article they abused that privilege. Since the defendants' first ground for summary judgment is dispositive of this case, the question of the existence of a privilege and whether it was abused need not be addressed.
C. Count Two
The defendants argue that if summary judgment as to count one CT Page 2481 is granted that count two should also fail because it is a derivative emotional distress claim based upon the libel claim in count one.
If summary judgment is granted for a defendant on the plaintiff's primary claim, summary judgment should also be granted as to any derivative claims. See Acampora v. Asselin,179 Conn. 425, 427-28, 426 A.2d 797 (1980) (derivative claim of comparative negligence failed when negligence claim failed);Murray v. Commissioner of Transportation, 31 Conn. App. 752, 575,626 A.2d 1328 (1993) (derivative claim of loss of consortium barred because named plaintiff's claim was barred); Pac v.Mastrobattisto, Inc., Superior Court, judicial district of Litchfield, Docket No. 072211 (February 20, 1997, Pickett, StateJudge Referee); Red Apple II, Inc. v. Hartford Courant, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 547043 (January 17, 1996, Hale, Judge Referee)
(summary judgment was granted on derivative claim of emotional distress when summary judgment was granted on defamation claim);Clarkson v. Greentree Toyota Corp., Superior Court, judicial district of Danbury, Docket No. 311823 (May 31, 1994, Moraghan,J.) (summary judgment on derivative claims of emotional distress was denied because summary judgment was denied on plaintiff's wrongful discharge claims); Corcoran v. Kurtyka, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 030462 (May 6, 1994, Rush, J.) (derivative claim is barred when the primary claims is barred).
The emotional distress claim in count two is a derivative claim to the libel claim. Since summary judgment is granted as to the primary claim, i.e., count one, the Motion for Summary Judgment is also granted as to the derivative emotional distress claim in count two.
SANDRA VILARDI LEHENY, J.