[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The present case was brought by the plaintiff, Ralph Bradley, through his conservator, to recover damages sustained when he was struck by a motor vehicle in Waterbury, Connecticut on April 26, 1993. At the time of the accident, the plaintiff was a resident at Kinsella Commons, a community residence in Waterbury, Connecticut owned and operated by the defendant, Central Naugatuck Valley Help, Inc. Prior to the plaintiff's residency at Kinsella Commons, the plaintiff was a patient at Fairfield Hills, a facility run by the Department of Mental Health, for treatment relating to a traumatic brain injury, seizure disorder and CT Page 9936 alcoholism. The plaintiff was released from Faifield Hills on February 1, 1993 and placed in Kinsella Commons.
The defendants, Central Naugatuck Valley Help, Inc., Dan Collins and Earl Siddell move for summary judgment on counts one, two and three of the plaintiff's complaint.[1] The first count sounds in common law negligence, the second count makes a claim for a violation of General Statutes § 17a-542, and the third count makes a claim for a violation of General Statutes §17a-541.
"Practice Book 384 [now Practice Book (1998 Rev.)§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"Haesche v. Kissner, 239 Conn. 213, 217, 640 A.2d 89 (1994). "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. ." (Internal quotation marks omitted.) Maffucci v. Royal Park Ltd.Partnership, 243 Conn. 552, 555, 707 A.2d 15 (1998).
"A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) Hammer v. Lumberman's MutualCasualty Co., 214 Conn. 573, 578, 573 A.2d 699 (1990). "Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Alterations in original; internal quotation marks omitted.) Home Insurance Co. v. Aetna Life Casualty Co., 235 Conn. 185, 202, 663 A.2d 1001 (1995). See also,Associates Financial Services of America, Inc. v. Sorenson,46 Conn. App. 721, 732, 700 A.2d 107, cert. granted, 243 Conn. 944,704 A.2d 798 (1997). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party[.]" (Internal quotation marks omitted.) Hertz Corp. v. Federal Insurance Co., 245 Conn. 374,381, 713 A.2d 820 (1998).
The defendants move for summary judgment on count one on the grounds that they owed no common law duty to the plaintiff. They CT Page 9937 argue that there existed no special relationship between them and the plaintiff that would give rise to a duty to aid or protect the plaintiff. The plaintiff argues that the defendants assumed the care and supervision of the plaintiff knowing that the plaintiff suffered with traumatic brain injury, seizure disorder and alcoholism. The plaintiff argues that the defendants knew that if proper care was not used, injury to someone was likely to occur. The plaintiff therefore argues that the defendants had a duty to protect him from harm.
"Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific person to whom it is owed, are determined by the circumstances surrounding the conduct of the individual. . . . Although. no universal test for [duty] ever has been formulated . . . our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant. Thus, initially, if it is not foreseeable to a reasonable person in the defendant's position that harm of the type alleged would result from the defendant's actions to a particular plaintiff, the question of the existence of a duty to use due care is foreclosed, and no cause of action can be maintained by the plaintiff." Fraser v. United States, 236 Conn. 625, 632-33,674 A.2d 811 (1996). "`Broadly considered, it might be said that the duty to exercise reasonable care arises whenever the activities of two persons come so in conjunction that the failure to exercise that care by one is liable to cause injury to the other.Swentusky v. Prudential Ins. Co., 116 Conn. 526, 533,165 A. 686. Brett, M. R., in Heaven v. Pender, L. R. 11. Q. B. D. 503, 509, thus stated the principle: Whenever one person is by circumstances placed in such a position with regard to another that if he did not use ordinary care and skill in his own conduct with regard to those circumstances he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger.' See 1 Street, Legal Foundations, p. 92; Pollock, Torts, p. 554. In the final analysis this is the real basis upon which the law imposes upon a physician, a bailee, an attorney, and other persons standing in such relationship, an obligation to exercise a certain degree of care or skill. It is because he is entrusted with the person or property of another or has assumed the performance of an act which may affect the rights of another under such circumstances that, unless he uses proper care, that other will suffer injury, that the law imposes or implies a duty to use such care. In other CT Page 9938 words, the particular facts which bring two persons into a relationship to each other are not necessarily controlling, but the true test is, speaking generally, being in that relationship, are the circumstances such that one, in the performance of some act within the scope of that relationship, unless he uses proper care, is likely to do injury to the person, property or rights of the other." Dean v. Hershowitz, 119 Conn. 398, 408-09, 177 A. 262
(1935).
Whether the defendants owed a common law duty to the plaintiff is dependent on a number of facts which remain unproven: whether the defendants were aware of the plaintiff's tendencies to leave the residence to purchase alcohol and to become intoxicated; the extent to which the defendants had custody over the person of the plaintiff. All of these facts are material in that they will make a difference in the result of this case. See United Oil Co. v. Urban Development Commission158 Conn. 364, 379, 260 A.2d 596 (1969); Topazio v. Cornerstone ofEagle Hill. Inc., Superior Court, judicial district of Waterbury, Docket No. 137269 (February 3, 1998, Pellegrino, J.); Irons v.Cole, Superior Court, judicial district of Waterbury, Docket No. 119038 (December 18, 1997, Pellegrino, J.).
The defendants also argue that the plaintiff was a voluntary resident and that they had no right to detain or confine him and therefore had no duty of care towards him. However, "it is said that when a patient enters a hospital maintained for private profit, he is entitled to such reasonable attention as his safety may require; and if he is temporarily bereft of reason, and is known by the hospital authorities to be in danger of self-destruction, the authorities are in duty bound to use reasonable care to prevent such an act." Hawthorne v. Blythewood, Inc.,118 Conn. 617, 623, 174 A. 81 (1934), quoting, Mulliner v.Evangelischer Diakonniessenverein, 144 Minn. 392, 294,175 N.W. 699. Although the defendant, Central Naugatuck Valley Help, Inc., is not a hospital, it is a facility for the care and treatment of mentally ill adults that receives consideration for doing so. The defendants received consideration for taking the plaintiff in as a resident. They knew or should have known about his problems with alcoholism and his tendencies to leave the facility to buy alcohol and to become intoxicated. Even if the plaintiff's residency was voluntary, the plaintiff's voluntary submission to the defendants' authority raises an implied obligation on the part of the defendants to give the plaintiff such reasonable care and attention for his safety as his mental and physical condition CT Page 9939 required because the defendants received compensation for caring for the plaintiff and knew of the plaintiff's condition. SeeHawthorne v. Blythewood, Inc., supra, 118 Conn. 623.
The court, therefore, finds that genuine issues of material fact exist as to whether the defendants owed a duty of reasonable care to the plaintiff.
In addition, the defendants argue that summary judgment should be granted as to counts two and three because they are not a "facility" within the meaning of General Statutes § 17a-540
because they are a community residence and do not diagnose, observe or treat their residents. They argue, therefore, that General Statutes § 17a-541 et. seq., otherwise known as the patients' bill of rights, does not apply to them. The plaintiff argues that the statutory scheme does support the conclusion that community residences are covered under the patients' bill of rights.
The plaintiff alleges in counts two and three violations of § 17a-541 and § 17a-542, sections within the patients' bill of rights. Section 17a-542. provides in relevant part that "[n]o patient hospitalized or treated in any public or private facility for the treatment of persons with psychiatric disabilities shall be deprived of any personal, property or civil rights." Section 17a-542 provides in relevant part that "[e]very patient treated in any facility for treatment of persons with psychiatric disabilities shall receive humane and dignified treatment at all times, with full respect for his personal dignity and right to privacy. Each patient shall be treated in accordance with a specialized treatment plan suited to his disorder. Such treatment plan shall include a discharge plan which shall include, but not be limited to . . . (3) planning for appropriate aftercare to the patient upon his discharge." The term "facility" is defined in § 17a-540 as "any inpatient or outpatient hospital, clinic, or other facility for the diagnosis, observation or treatment of persons with psychiatric disabilities."
A community residence is defined in General Statutes §19a-507a as "a facility which houses the staff of such facility and eight or fewer mentally ill adults which is licensed by the Commissioner of Public Health and which provides supervised, structured group living activities and psychosocial rehabilitation and other support services to mentally ill adults CT Page 9940 discharged from a state-operated or licensed facility or referred by a licensed physician specializing in psychiatry or a licensed psychologist." This same statute defines "mentally ill adult" as "any adult who has a mental or emotional condition which has substantial adverse effects on his ability to function and who requires care and treatment but shall not mean any adult who is dangerous to himself or herself or others, as defined in section17a-495, or who is an alcohol-dependent person or a drugdependent person, as defined in section 17a-680, or who has been placed in any community-based residential home by order of the Superior Court or has been released to any community-based residential home by the Department of Correction or any person found not competent to stand trial for any crime pursuant to section 54-56d
or committed pursuant to sections 17a-580 to 17a-602, inclusive. . . ."
Whether a community residence is within the purview of §17a-540, therefore, depends upon whether it can be considered to diagnose, observe or treat persons with psychiatric disabilities. Chapter 319i which includes the patients' bill of rights is entitled "Mentally ill Persons." Chapter 368v which includes the statutes regarding community residences is entitled "Health Care Institutions." Chapter 368v also includes provisions for such institutions as hospitals, nursing homes and home health care agencies. The defendants argue that, because there is a separate regulatory scheme for community residences, they were not meant to be included within the patients' bill of rights. However, the statutory scheme includes community residences in with other facilities, such as hospitals: therefore, no argument can be made that these facilities are not within the purview of §17a-540. The fact that there is a separate regulatory scheme for community residences is not enough to exclude it from the mandates of the patients' bill of rights. See Normand JosefEnterprizes v. Connecticut National Bank, 230 Conn. 486, 518,646 A.2d 1289 (1994). Including community residences in the definition of "facility" in § 17a-540 would not frustrate the regulatory scheme of either the patients' bill of rights or community residences.
In addition, § 19a-507a itself lends credence to the position that community residences are a facility for purposes of the patients' bill of rights. The statute describes mentally ill adults as persons needing "care and treatment." This section also requires the community residence to provide psychosocial rehabilitation. The Supreme Court in Mahoney v. Lensink,
CT Page 9941213 Conn. 548, 569 A.2d 518 (1990), in defining treatment, looked to the American Psychiatric Association's definition which considered treatment as a comprehensive approach including "active intervention of a psychological, biological, physical, chemical, education or social nature where application of the individualized treatment plan is felt to have a reasonable expectation of improving the patient's condition.' R. Sadoff, Legal Issues in the Care of Psychiatric Patients: A guide for the Mental Health Professional (1982) p. 32. Meaningful treatment thus requires not only basic custodial care but also an individualized effort to help each patient by formulating, administering and monitoring a specialized treatment plan' as expressly mandated by [17a-542]." (Emphasis added.) Id., 565. The plaintiff was a mentally ill adult who required care and treatment. This treatment, according to the Supreme Court, includes treatment of an educational or social nature. Whether the plaintiff was under a specialized treatment plan of which the defendants were a part or was receiving treatment at the community residence is a question of fact for the jury to decide. The defendants have failed to establish that these facts are undisputed. The court, therefore, finds that there exists a genuine issue of material fact with reference to counts two and three.
Because the court finds that genuine issues of material fact exist whether the defendants owed a duty of reasonable care to the plaintiff and whether the plaintiff was under a specialized treatment plan of which the defendants were a part or receiving treatment from the defendants, the court denies the defendants motion for summary judgment.
SANDRA VILARDI LEHENY, J.