[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
The present motion for summary judgment is the result of a foreclosure action by the plaintiffs, Kristine O'Rourke and Bourne Properties, LLC (Bourne), arising out of a disputed secondary mortgage executed at a closing for property and new home constructed thereupon. The pleadings, affidavits and other documents submitted reveal the following facts.
On August 26, 1996, the defendants, Anne Lahda and John W. Lahda, III, contracted with Seraya, Inc. (Seraya) to build a new home on property owned by Seraya located at 35 Andover Drive, Rocky Hill, Connecticut (the property). The construction was led by Eugene Sammartino, the president of Seraya. (See Affidavit of Sammartino, ¶ 2.) The sales and construction agreement dated August 26, 1996 was signed by Sammartino on behalf of Seraya and the defendants and reflects a total contract price of $230,000. (See Defendants' Exhibit G and Plaintiffs' Exhibit 6, sales/construction agreement.) Nine addendums to the sales and construction agreement were executed thereafter referencing and/or representing additional work authorizations totaling $39,377.95. (See Exhibit 5, addendums.)
In order to purchase the property, the defendants obtained a commitment for a construction-first mortgage loan from Chase Manhattan Mortgage CT Page 12096 Corporation on July 29, 1997, in the amount of $230,000. (See Exhibit I, settlement statement.) Prior to the closing on the property, Sammartino presented the defendants with several drafts of a note in the amount of $28,463 and a mortgage deed identifying the property. (See Affidavit of O'Rourke, ¶ 6.) The defendants signed the documents of which a note and mortgage deed were recorded with the town clerk of Rocky Hill on August 15, 1997, second in priority to the Chase Manhattan mortgage. Plaintiff O'Rourke was named as the original holder on both the note and the mortgage deed. (See Exhibit A, letter from O'Rourke's attorney; Exhibit 7, mortgage note.)
Plaintiff O'Rourke declared the entire balance of the note due and payable upon the defendants' nonpayment of principle and interest installments due on the note as of August 5, 1997. (See foreclosure filed May 14, 1998; Exhibit 7, mortgage note, rights of holder upon non-payment.) The defendants still made no payments thereafter. On May 14, 1998, plaintiff O'Rourke commenced this foreclosure action claiming nonpayment on the note and seeking payment of the entire balance. (See Foreclosure filed May 14, 1998; Exhibit 7, mortgage note.)
On October 22, 1998, plaintiff O'Rourke assigned the mortgage deed to plaintiff Bourne, who recorded it in the land records of Title in Rocky Hill, Connecticut. (See Exhibit E, statutory assignment of mortgage.) On February 9, 1999, plaintiff O'Rourke filed a motion to substitute plaintiff Bourne as the party plaintiff and amend the complaint (#108). The court, Shortall, J., denied the motion without prejudice and sua sponte added plaintiff Bourne as a party plaintiff.[1] Plaintiff Bourne did not file an amended complaint thereafter.[2] On June 19, 1998, the defendants filed an answer with special defenses and counterclaims which are not the subject of this motion.
On March 13, 2000, the defendants filed this motion for summary judgment accompanied by a memorandum of law, affidavits and other supporting documents. On May 1, 2000, the plaintiffs filed a memorandum in opposition along with affidavits and other documents. The court heard oral arguments on May 1, 2000, and now renders this memorandum of decision.
"[Summary judgment] shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Practice Book § 17-49; see also Dowling, Sr. v. Finley Associates.Inc., 248 Conn. 364, 369-70, 727 A.2d 1245 (1999). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Sherwood v. Danbury Hospital,
CT Page 12097252 Conn. 193, 201, 746 A.2d 730 (2000): "[T]he court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski, 206 Conn. 495, 500. 538 A.2d 1031
(1988); see Dubinsky v. Citicorp Mortgage, Inc. 48 Conn. App. 52, 55,708 A.2d 226, cert. denied, 244 Conn. 926, 714 A.2d 9 (1998). "A `material' fact . . . [is] a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) Hammer v.Lumberman's Mutual Casualty Co., 214 Conn. 573, 578, 573 A.2d 699
(1990). "The test is whether a party would be entitled to a directed verdict on the same facts." Sherwood v. Danbury Hospital, supra, 201.
As the party moving for summary judgment, the defendant "has the burden of showing the absence of any genuine issue of material facts . . .";Ruddock v. Burrowes, 243 Conn. 569, 573-74, 706 A.2d 967 (1998); and supporting its motion with documentation, including affidavits. SeeHeymen Associates No. 1 v. Insurance Co. of Pennsylvania, 231 Conn. 756,796, 653 A.2d 122 (1995); see also Practice Book § 17-45. To defeat the motion, "the nonmovant must recite specific facts which contradict those stated in the movant's affidavits and documents." (Internal quotation marks omitted.) Connecticut National Bank v. Great NeckDevelopment, 215 Conn. 143, 148, 574 A.2d 1298 (1990); see alsoHryniewicz v. Wilson, 51 Conn. App. 440, 444, 722 A.2d 288 (1999). "If the affidavits and other supporting documents are inadequate, then the court is justified in granting the summary judgment, assuming that the movant has met his burden of proof." (Internal quotation marks omitted.)Associates Financial Services of America, Inc. v. Sorenson,46 Conn. App. 721, 732, 700 A.2d 107, cert. dismissed, 245 Conn. 168,710 A.2d 769 (1997); see also Hryniewicz v. Wilson, supra, 444.
The defendants argue that the note and mortgage deed are unenforceable because they were executed in violation of the licencing requirements[3]
set out in General Statutes § 36a-511.[4] Specifically, the defendants argue that Sammartino was not licensed as a secondary mortgage broker or lender under the secondary mortgage act and fell under no exceptions thereto, thus he executed the instruments illegally. In addition, the defendants argue that neither of the plaintiffs were licensed at the relevant times nor fell under any exception to the licencing requirement,[5] and therefore, obtained the instruments in violation of § 36a-511.
Our Supreme Court has made it clear that secondary mortgages taken by lenders in violation of § 36-511 are unenforceable. See Solomon v.Gilmore, 248 Conn. 769, 790-91, 731 A.2d 280 (1999). The facts in theSolomon case are very similar to those in the present case. There, the plaintiffs filed a foreclosure action against the defendants for payments due on a promissory note secured by a second mortgage encumbering CT Page 12098 property owned by the defendants. Our Supreme Court noted that although § 36a-511 does not expressly address the enforceability of a contract entered into by an unlicensed lender, the statute must be construed with the objective of ascertaining and giving effect the apparent intent of the legislature. See id., 774. The Court also noted that contracts violating public policy are unenforceable and given that the secondary mortgage act is remedial and intended to protect the consumer, it "should be liberally construed in favor of those whom the law is intended to protect." Id., 774-75. Specifically, the Court stated that "the licencing requirement generally aims to protect consumers by prohibiting certain unscrupulous lending practices." Id., 776. Ultimately, the Court construed the secondary mortgage act liberally in favor of the defendants thereby rendering any secondary mortgage executed in violation of §36a-511 unenforceable. See id., 790-91.
As a result, whether the maker of the secondary mortgage is licenced or exempt from licencing is a material issue in the present foreclosure action. See Statewide Grievance Committee v. Solomon, Superior Court, judicial district of New Haven at Meriden, Docket No. 269373 (February 8, 2000, Levine, J.). The court finds that no genuine issues exist regarding the fact that, of the parties involved in the execution of the secondary mortgage, none were licenced. Furthermore, because violating the licensing requirement in § 36-511 is determinative as to the legality of the transaction, all other issues regarding the plaintiffs' status as broker, lender, maker or holder are immaterial. Therefore, the court finds the secondary mortgage was executed illegally and is unenforceable in all of the possible scenarios evidenced in the pleadings, affidavits and other documents as discussed in more detail below. See General Statutes § 36a-511; Solomon v. Gilmore, supra,248 Conn. 790-91. Accordingly, the motion for summary judgment is granted in this regard.
First, the facts depict Sammartino as either the broker of the secondary mortgage or the lender, acting on behalf of Seraya.[6] The following factors were considered in reaching this conclusion. Sammartino may have brokered the secondary mortgage when he found and negotiated with the defendants when he met with them and offered them several drafts of instruments and ultimately placed the mortgage as alleged by the defendants. See General Statutes §§ 36a-510 and 511. Although there is no evidence to indicate that Sammartino was paid a fee to broker this secondary mortgage, it may not be determinative because the secondary mortgage ultimately benefitted [benefited] him and Seraya.
Nonetheless, Sammartino made the secondary mortgage, which by definition also makes him the lender. The consideration for the debt appears to be the additional work on the defendants' new home that was CT Page 12099 completed by Seraya.[7] This is evidenced by Sammartino's own affidavit in which he states that the defendants' first payment on the note of $1000 was made to Seraya and not to plaintiff O'Rourke. (See Exhibit 2, affidavit of Sammartino; Exhibit 3, check.) Therefore, the lender was Sammartino.
The defendants maintain that Sammartino was not licenced as a broker or lender under § 36a-511 at the relevant times and did not fall within any of the exceptions in § 36a-512. In the absence of any evidence to the contrary offered by the plaintiffs, no question of fact remains with regard to the illegal execution of the note and mortgage deed by an unlicenced broker and/or lender in violation of § 36a-511.
As a result, plaintiff O'Rourke, regardless of her status in the transaction and thereafter, cannot enforce the mortgage note as her rights are subject to the illegality of the transaction. Plaintiff O'Rourke was not present at the execution of the note and deed and gave no consideration for the debt, yet she is named as the holder of the note and deed. If plaintiff O'Rourke is considered an indirect maker of the secondary mortgage under § 36a-510, there is no question that she was not licensed to engage in the secondary mortgage loan business, and failed to fall within any of the exceptions to the requirements set out in § 36a-511.[8] (Exhibit A, letter from Attorney O'Rourke to Department of Banking.) Therefore, there is no genuine issue of material fact that the secondary mortgage was executed illegally. Furthermore, if plaintiff O'Rourke is considered only the holder of the note, having no role in its execution, she has no right to enforce the debt evidenced therein as she is subject to the illegality of the transaction, that under the law, nullifies the obligation of the defendants. See General Statutes § 42a-3-305 (a)(1) (ii); see also Federal Deposit InsuranceCorp. v. Weinstein, Superior Court, judicial district of Tolland at Rockville, Docket No. 054078 (August 16, 1995, Rittenband, J.) (when the FDIC takes as a holder in due course, a defendant must assert real defenses such as illegality as opposed to merely personal defenses).
Additionally, plaintiff Bourne, as assignee of the mortgage deed, has no right to enforce the mortgage deed. The assignee of a mortgage stands in the shoes of his assignor, with the same rights. See Reynolds v.Ramos, 188 Conn. 316, 449 A.2d 182 (1982). Accordingly, Bourne's rights are subject to the illegality of the transaction that, under the law, nullifies the obligation of the plaintiffs. See General Statutes §42a-3-305 (b); see also Federal Deposit Insurance Corp. v. Weinstein,
supra, Superior Court, Docket No. 054078.
Finally, the defendants seek costs, reasonable attorney's fees and sanctions under the Connecticut Unfair Trade Practices Act (CUTPA), CT Page 12100 General Statutes § 42a-110b et seq., on the ground that the plaintiffs refused to withdraw this foreclosure action in light of the unrefutable law and evidence showing the action to be frivolous. Specifically, the defendants maintain that the plaintiffs violated CUTPA by violating two statutes through their debt collection practices and executing a secondary mortgage without a licence.
Section 42-110b (a) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Furthermore, section 42-110g (a) provides for actual and punitive damages for "any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section42-110b. . . ."
"It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the `cigarette rule' by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers. . . . All three criteria do not need to be satisfied to support a finding of unfairness." (Citations omitted; internal quotation marks omitted.) Hartford Electric Supply Co. v. Allen-Bradley Co.,250 Conn. 334, 367-68, 736 A.2d 824 (1999).
The court finds that genuine issues of material fact exist with respect to the first two prongs of the cigarette rule. First, the licencing requirement in the Secondary Mortgage Act "generally aims to protect consumers by prohibiting certain unscrupulous lending practices." Solomonv. Gilmore, supra, 248 Conn. 776. The court need not determine whether the violation of the statute offends public policy because plaintiff O'Rourke's status and the extent of her participation in executing the secondary mortgage remains unclear. Plalntiff O'Rourke was not present when the secondary mortgage was brokered, negotiated or executed, and she did not provide consideration for the debt. She is, however, named as the holder of both the note and mortgage deed. Consequently, the evidence provided raises factual issues as to whether her participation constitutes a violation of § 36a-511 and in turn, possibly a violation of CUTPA.
Factual issues also exist regarding whether the plaintiffs' actions were immoral, unethical, oppressive, or unscrupulous. The defendants claim that neither an attorney representing them nor a notary public was CT Page 12101 present at the time of the signing. They claim they signed the note and deed under duress because Sammartino threatened that Seraya. would refuse to convey the property to the defendants unless they executed the second mortgage. The defendants assert that they signed the documents in fear of losing their life savings and a substantial purchase money gift they received, both of which were completely invested in the property. In contrast, the plaintiffs claim that at the time of the signing, the defendants' were represented by counsel. Additionally, they claim that the defendants had asked that the note be executed to cover the additional costs because the defendants did not have the funds to close given the additional orders. (See plaintiff's memorandum; Exhibit 2, affidavit of Sammartino, ¶ 4.) Sammartino's affidavit states that the defendants' attorney had knowledge of this and bases his belief on the fact that defense counsel gave him a check for $7,000 made payable to Seraya, which indicated on it that it was to be applied to the balance of the extra costs incurred. (See Exhibit 2, affidavit of Sammartino, ¶ 4.) Additionally, Sammartino's affidavit maintains that the first payment of $1,000 was made to Seraya. (See Exhibit 2, affidavit of Sammartino, ¶ 9; Exhibit 3, check.) Also, the plaintiffs claim that a notary was present when the mortgage deed was signed. (See Exhibit 2, affidavit of Sammartino, ¶ 5.)
Accordingly, the pleadings, affidavits and documents submitted raise factual issues with regard to whether the plaintiffs committed CUTPA violations and, therefore, the issue of damages thereunder cannot be resolved by summary adjudication. Therefore, the defendants' motion for summary judgment is denied as to damages.
BY THE COURT
Hon. Andre M. Kocay, J.