HARRY WILSON ET AL. *v.* KAPETAN, INC.
(8987)

DUPONT, C. J., NORCOTT and LAVERY, Js.

Argued January 17—decision released August 20, 1991

*Tracy Alan Saxe,* with whom was *Susan B. Freedman,* certified legal intern, for the appellant-appellee (defendant).

*Steven B. Kaplan,* for the appellees-appellants (plaintiffs).

LAVERY, J. The defendant, Kapetan, Inc., appeals from the judgment of the trial court awarding damages to the plaintiffs[1] for breach of a construction contract. Kapetan claims that the trial court was incorrect (1) in finding that it had wrongfully terminated the contract between it and Wilson, (2) in holding that Wilson had substantially performed the subject contract despite his alleged refusal to follow Kapetan's instructions and his failure to perform the work in a timely manner, and (3) in awarding damages to Wilson in the amount of $42,838.29. In a cross appeal, Wilson asserts that the decision of the trial court was improper in its failure (1) to find that Kapetan had wrongfully rescinded the

[1] The plaintiffs in this case are Harry and Margaret Wilson, who were doing business as Harry Wilson Excavating. We will refer in this opinion to the plaintiffs as Wilson.

contract, (2) to award damages for that rescission in quantum meruit based on the reasonable value of the services rendered, and (3) to award prejudgment interest to Wilson. We conclude that the trial court's finding that Kapetan breached the contract is not clearly erroneous, and that its assessment of damages is legally and logically correct. We affirm the judgment of the trial court.

In its memorandum of decision, the trial court found the following facts. On June 5, 1989, Kapetan, a general contractor, engaged Wilson as a subcontractor for all site work, including drainage, septic and paving work required for the construction of the Valley Presbyterian Church in Brookfield. Under the terms of the written subcontract, Wilson was to furnish all labor and materials to complete the site work for which he was to be paid $93,188. In addition to the original subcontract there was a change order in the amount of $3616, and additional work performed in the amount of $4922.50, bringing the total contract price to $101,726.50. Although the contract outlined the progression that the various phases of the work should take, it contained no completion date and no schedule dictating when each phase was to begin or end.

Wilson began work in May, 1987, and substantially completed the contract by the middle of December, 1987, when he was discharged by Kapetan before completing the final paving phase of the contract. While Wilson was still on the job, his progress was impeded by Kapetan's imperfect direction, its failure to coordinate subcontractors, and its inability to provide modified drainage plans and accurate benchmarks in a timely manner. Due to the resulting delay, Wilson could not begin the paving phase of the project before December, 1987. The wet soil conditions and the inclement climatic factors combined to prevent Wilson from pav-

ing. Because Wilson was required by the terms of the subcontract to warranty the paving for one year, he was unwilling to perform this phase of the contract in December, despite Kapetan's insistence that he do so.

When Wilson refused to proceed with the paving, Kapetan terminated their contract and engaged another excavation contractor to complete the work. In addition, Kapetan paid for certain materials on Wilson's behalf. Wilson brought the underlying action against Kapetan for breach of contract and Kapetan filed a counterclaim seeking recompense for additional expenses incurred as a result of Wilson's failure to perform his obligations under the contract.

The court found that Kapetan had wrongfully terminated the contract and, on the counterclaim, that Wilson was not in breach. Accordingly, the court awarded Wilson $42,838.29, a sum that represents the total contract price including additions and change orders minus a credit to Kapetan of $58,888.21 representing the amount Kapetan paid for material on Wilson's behalf and the scheduled value of the paving phase of the contract not completed by Wilson.

I

On appeal, our review of Kapetan's first two claims are limited to a determination of whether the trial court's conclusions that Kapetan breached the construction contract with Wilson and that Wilson had substantially performed the contract are clearly erroneous in light of the evidence and pleadings contained in the whole record. Practice Book § 4061; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–23, 435 A.2d 24 (1980); *Metropolitan District* v. *Housing Authority,* 12 Conn. App. 499, 510, 531 A.2d 194, cert. denied, 205 Conn. 814, 533 A.2d 568 (1987).

"Whether a building contract has been substantially performed is ordinarily a question of fact for the trier to determine. . . . The resolution of conflicting factual claims falls within the province of the trial court. . . . 'The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . .' We cannot retry the facts or pass on the credibility of the witness." (Citations omitted.) *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.,* 207 Conn. 468, 472–73, 542 A.2d 692 (1988).

Upon reviewing the entire record, we find no reason to disturb the trial court's findings that Kapetan breached its contract with Wilson and that Wilson had substantially performed. The trial court's factual findings and ultimate conclusions are supported by the record and are not clearly erroneous.

II

Kapetan next asserts that under the formula set forth by our Supreme Court in *Young* v. *Shetucket Coal & Wood Co.,* 97 Conn. 92, 94–95, 115 A. 672 (1921), the proper measure of damages when the contractor has been prevented from completing the contract work is the cost incurred in performing the subcontract work plus the lost profit on the subcontract. Kapetan maintains that because Wilson failed to carry its burden of proving at trial its costs or its lost profits, it is entitled only to nominal damages for the work performed. We disagree.

In general, when a party is awarded damages based on a breach of contract, he is entitled to compensation that will place him in the same position he would have occupied had the contract been fully performed. *Fuessenich* v. *Dinardo,* 195 Conn. 144, 153, 487 A.2d 514 (1985); *Bertozzi* v. *McCarthy,* 164 Conn. 463, 468, 323

A.2d 553 (1973). It is well settled that this measure of damages requires a factual inquiry to determine the loss the plaintiff has sustained in the form of (1) expenditures incurred toward performance of the contract, and (2) the lost profit that would have been realized had the entire contract been performed. *Young* v. *Shetucket Coal & Wood Co.*, supra; *Tompkins* v. *Bridgeport*, 94 Conn. 659, 682, 110 A. 183 (1920).

In the case before us, there was ample evidence adduced at trial to provide the finder of fact with a basis for awarding the damages that it did award. In its memorandum of decision, the court relied on the contract and the change order that was offered as the plaintiff's exhibits F and I to determine a base contract price of $96,804. To that price, the court added the additional work reflected by the plaintiff's exhibit R of $4922.50 to determine the total gross price of the contract of $101,726.50. From that gross figure the trial court deducted credits in favor of the defendant amounting to $58,888.21, which it was able to determine from the plaintiff's exhibit P. The $58,881.21 credit figure was arrived at by deducting $28,800 of prior payments by Kapetan, $2921 in credits for work done by others and $27,188 for the paving work not done.

There was evidence before the court that the value of the work, in costs and in profits, was divided into four separate segments, and the cost and allocation of profit for the paving segment was $27,188. In its brief, Wilson admits that it failed to claim lost profits on the uncompleted paving segment at trial. The trial court properly awarded no damages for lost profits on that segment of the contract. The trial court had substantial evidence from which it made a reasonable determination of damages.

### III

Wilson's claims on cross appeal are equally unpersuasive. The revised complaint set forth two alterna-

tive theories on which the court could assign liability to Kapetan for its breach of contract. The court properly chose one of those theories and awarded damages to Wilson based on what Wilson asked in the ad damnum clause of its complaint.

Although a plaintiff is entitled to allege separate theories of liability in the alternative, he is not entitled to recover twice for the same elements of damage. *Jonap* v. *Silver,* 1 Conn. App. 550, 561, 474 A.2d 800 (1984). Wilson tried the case on a theory of breach of contract and that is the basis on which the court found for Wilson. "Where . . . a case is tried upon a certain theory, [a reviewing court] will dispose of the case on the theory on which it was tried and on which the trial court decided it." *Crozier* v. *Zaboori,* 14 Conn. App. 457, 463, 541 A.2d 531 (1988). "A plaintiff cannot try his case on one theory and appeal on another." *McNamara* v. *New Britain,* 137 Conn. 616, 618, 79 A.2d 819 (1951).

Wilson's assertion that the court incorrectly failed to award prejudgment interest under General Statutes § 37-3a is also without merit. "The allowance of interest as an element of damages is primarily an equitable determination and a matter within the discretion of the trial court." *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.,* supra, 482; see also *Metcalfe* v. *Talarski,* 213 Conn. 145, 160, 567 A.2d 1148 (1989); *West Haven Sound Development Corporation* v. *West Haven,* 207 Conn. 308, 321, 541 A.2d 858 (1988).

Our careful review of the record discloses no abuse of discretion by the trial court in refusing to award prejudgment interest.

The judgment is affirmed.

In this opinion the other judges concurred.