[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff in this case, T.P. Brewer Construction Company, Inc., was at all times pertinent to this case a Connecticut corporation doing business in Connecticut. The President of this corporation was Terrence P. Brewer. Terrence P. Brewer and J. Scott Guilmartin, each owned 50% of the stock of said corporation. The named defendants in this case are FG Associates, a general partnership and Phillip Fine, individually, Morton Fine, individually and J. Scott Guilmartin, individually. The general partners of FG Associates were Phillip Fine and Morton Fine each owning 25% and the J. Scott Corporation owning 50%. The principal stockholders of J. Scott Corporation were J. Scott Guilmartin and Terrence Brewer each owning 50% of the stock in said corporation. Terrence Brewer was the President of J. Scott Corporation.
FG Associates were the owners of a certain piece or parcel of land located in East Granby, Connecticut on which it was to develop an office park financed by a mortgage from Connecticut Bank and Trust Co. The name of the office park was Creamery Brook Office Park.
On or about September 20, 1988, T.P. Brewer Construction Co., Inc., entered into an agreement with Phillip Fine, Morton Fine and J. Scott Guilmartin, i.e., two of the partners of FG Associates and a co-owner of the third partner who was active in the financial affairs of FG Associates, whereby T.P. Brewer Construction, Inc., agreed to perform site work for Creamery Brook Office Park in accordance with certain plans submitted by the parties and the defendants agreed to pay Brewer Construction CT Page 6078 Co. Inc., the sum of $420,957.00 for the performance of the contract. The plaintiff proceeded to perform its obligations under the contract completing a large portion of the work contracted for, but was forced to cease any further work in December of 1989 at which time it prepared the project for winter and suspended its operations. Plaintiff had determined that the bank was about to foreclose on the property and the defendants had run out of money with which to pay under the contract. All parties agreed that in addition to the work authorized in the original contract, the plaintiff, with the permission of the defendants, performed $29,874.58. worth of extra work. Much of this had to do with additional requirements with respect to pipes under Route 20, the highway adjoining the property.
Once a month the plaintiff would submit to the bank for its examination a computer printout showing the amount of work which had been completed up to date and the amount due on same. This would be examined also by the defendants and the bank would then furnish the defendants with a check in the appropriate amount which would then be paid to plaintiff. In this manner plaintiff received $300,997.00 out of the contracted amount of $420,957.00. The last of these requisitions was submitted in November of 1989 which showed approximately $2,500.00 worth of work done for which plaintiff had not been paid. This has never been paid.
The court finds that the amounts submitted on the requisitions were approximations and the figures were arrived at as an accommodation to the defendants in order to have the bank supply them with sufficient money to proceed with the building of the office park. The amounts shown on the requisitions were not accurate.
The court also finds that plaintiff did complete a certain amount of work for which it has not been paid.
After making demand on the defendants this action was brought against them in two counts. The first being in breach of contract and the second in quantum meruit.
In its requisitions the plaintiff showed $11,016.00 worth of work done with respect to certain light poles for which it was paid. The plaintiff agrees that this work was not performed land that the $11,016.00 worth of poles were returned and any CT Page 6079 amount due plaintiff is to be reduced by said amount.
The plaintiff has offered evidence both under the theory of breach of contract and under the theory of quantum meruit. Both parties agree that the correct rule for damages under breach of contract is that outlined in Young vs. Shetucket Coal and Wood Co., 97 Conn. 92 (1921) although the parties differ as to the correct application of the rule. In that case a building contractor did not substantially complete the work for which he contracted and was prevented from doing so by the defendant owner. The court held that the plaintiff was entitled to cease work and sue for damages for breach of contract or for quantum meruit. If the plaintiff chose the breach of contract theory the measure of damages would be "for the work done, such a proportion of the entire price as the fair cost of the work bears to the fair cost of the whole work and in respect to the work not done such profit as he would have realized by doing it."
In the opinion of this court, insufficient evidence was introduced to substantiate recovery by the plaintiff under the theory of breach of contract. Among other things, there was no evidence of loss of profit on the work unfinished and no acknowledgement of this as happened in the case of Wilson vs. Kapetan, Inc., 25 Conn. App. 529, 534.
With respect to Count Two, in which the plaintiff relies upon quantum meruit, Connecticut Case Law holds that a contractor who was prevented by an owner from completing the contract, may treat same as recinded [rescinded]. Valente vs. Weinberg, 80 Conn. 134, (1907). Connelly vs. DeVoe, 37 Conn. 570
(1871), and the contractor may sue upon quantum meruit for the work performed. Young vs. Shetucket Wood and Coal Co., 97 Conn. 92,94 (1921). This is based upon equity not upon the original contract between the parties. Simonetti vs. Lovermi, 15 Conn. App. 722,725-26 (1988). Where the defendants themselves have prevented full performance of the contract "the plaintiff is permitted a recovery for the reasonable value of labor and materials already furnished, without regard to the extent of the benefit conferred upon the other party to the contract." Martin v. Kavanewsky, 157 Conn. 514, 519 (1969). Kearns v. Andree,107 Conn. 181, 186 (1928).
In the opinion of this court, the plaintiff's completion of the project was prevented by the defendants. At that time the CT Page 6080 value of the services rendered by the plaintiff and for which it was uncompensated was $57,707.15 less the sum of $11,016.00 (the value of the returned light poles) plus the sum of $29,874.00 being the value of the extras performed by the plaintiff or a net sum due the plaintiff for which he was uncompensated of $76,565.15. The sum of $57,707.15 is the value in excess of the sum received testified to by Terrence Brewer and appearing on Schedule D.
In the opinion of this court, J. Scott Guilmartin is correctly named as an individual defendant in this case. "[I]t is the duty of an agent to disclose not only the fact that he is acting in a representative capacity, but also the identity of his or her principal if the individual seeks to avoid personal liability in a business transaction." Diamond Match Co. v. Crute, 145 Conn. 277, 279 (1958). "The individuals or entities with whom an agent deals are not bound to inquire as to whether the person is acting in a representative capacity." Zolan, Bernstein, Dworkin Klein v. Milone, 1 Conn. App. 43, 46
(1983). The lone fact that the parties were aware of Guilmartin's part ownership of J. Scott Corporation is insufficient to overcome the balance of the evidence on this subject. The contract was drafted by him by his own admission. He was very familiar with the use of the corporate vail having used it himself in various transactions. Indeed he was related to this case in two instances in a corporate capacity. When he drew the contract, he took great care to see that T.P. Brewer Construction Co. was properly identified as a corporation and that Terrence P. Brewer was identified as its President and signed as such, whereas he, the draftsman, signed his name under FG Associates with no attempt to designate a corporate capacity. Having in mind that of the four persons involved in this transaction, Brewer was the construction person and the other three the business associates and noting that in case of default the plaintiff was the one who would suffer and taking into account Brewer's testimony that he wanted the other three to sign as individuals in order to protect himself from just such a situation as has arisen in this case, this court is compelled to hold that J. Scott Guilmartin signed as an individual and is individually liable.
On the complaint, therefore, i.e., T.P. Brewer Construction Co. Inc., v. J. Scott Guilmartin, Morton S. Fine and Phillip J. Fine, judgment may enter for the plaintiff against the individual defendants jointly and severally in the amount of CT Page 6081 $76,565.15.
The defendant has raised three special defenses to the plaintiff's amended complaint. The first, which claims that the contract was a nullity because it was not voted on at a meeting of the board of directors of the plaintiff corporation, was abandoned by the defendant on trial and in its briefs, has no merit.
The second special defense which claims that the defendants have paid the plaintiff in full for any and all monies which were due and owing is answered by the decision of the court rendered above as is the third special defense to the effect that the plaintiff has failed to perform his contractual obligations leaving an amount in excess of $200,000.00 worth of work unfinished.
In addition to the special defenses the defendants have raised a counter-claim in three counts. In the first count the defendants allege breach of contract by T.P. Brewer Construction Co. in that it has failed to substantially perform the services and supply the materials for which it demanded and received payment and that the defendant has paid an amount in excess of the amount rightfully due and owing T.P. Brewer. In making this claim and in substantiation of its special defenses two and three the defendant alleges that T.P. Brewer and or his creditors were paid $59,383.00 on behalf of the defendants by Creamery Brook Office Park Two for services and materials which Brewer had billed to FG.
In the opinion of this court, there is no credible evidence to substantiate this claim. This claim was raised only after the law suit was brought. The only testimony offered was the oral testimony of one individual. There was no written documentation and no corroborating evidence of any sort; a highly unusual set of circumstances for a real estate transaction of this dimension. Also it is difficult to understand how the defendants could justify a credit of $59,000.00 toward the purchase price of the CBOP II site work. If similar work were to be done on each site, it would appear that the total value of site work on all lots would amount to $420,000.00 as much as the overall contract with nothing left over for roads, drainage, paving sidewalks, etc.
With respect to the second and third counts of the counter CT Page 6082 claim the court finds that there was insufficient evidence adduced to substantiate either such claim.
The second count is an action in fraud. In Alaimo v. Royer, 188 Conn. 36, 39 (1982), the court stated fraud must be "strictly proven by clear precise and unequivocal evidence." See also Tate LaPlante Handbook Connecticut Evidence, Section 4.5.1(h) and Boundbook Association vs. Norwalk, 198 Conn. 660,666 (1986). In J. Frederick Scholes Agency v. Mitchell, 191 Conn. 353,358 (1983), the court stated "the essential elements of an action in fraud as we have repeatedly held, are (1) that a false representation was made of the statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; (4) that the latter did so act on it to his injury." See also Miller v. Appleby, 183 Conn. 51, 54-55 (1981). The defendants rely upon their allegations that the plaintiff submitted requisitions for payment as to work completed which were not 100% accurate. In the opinion of the court, these requisitions were submitted only as an accommodation to the defendants so that they could obtain financing. They were only estimates and this was known to the defendants.
In the third count of this counter-claim, the defendant alleged that the so called representations by T.P. Brewer constituted unfair and deceptive trade practices in violation of the Connecticut Unfair Trade Practices Act, Section 42-110a, et seq. of the Connecticut General Statutes in that said actions of T.P. Brewer were deceptive acts and practices and caused substantial injury to FG. In addition to the fact that the defendants were well aware of the fact that the requisitions were estimates, the actions of the plaintiff were not such as would offend public policy, could not be considered immoral or unethical or unscrupulous since they were acceded to by the defendants and no injury whatsoever to the defendants has been proven. See Sportsmen Boating Corporation v. Hensley, 192 Conn. 747
(1984).
As stated by the plaintiffs in their brief, "it is impossible for a party to be deceived by a trade practice when the underlying activity has been specifically requested by that same party.
Judgment may enter for the plaintiff as to each count of the defendants counter-claim. CT Page 6083
In addition to their special defenses to the complaint as amended and their counter-claim as amended, the defendants have filed a third-party complaint against Terrence P. Brewer individually. The first count alleges misrepresentation and is similar in content to the second count of the counter-claim except that it is against Terrence P. Brewer individually rather than the T.P. Brewer Construction, Inc. Since it was alleged in the counter-claim that the various alleged misrepresentations were made by T.P. Brewer individually on behalf of the T.P. Brewer Corporation it stands to reason that since evidence was insufficient to establish misrepresentation in the counter-claim it would also fail to establish misrepresentation in the third-party complaint.
The same is true as to the second count of the third party complaint which is an alleged violation of CUTPA by Terrence P. Brewer individually.
Accordingly, judgment may enter for the third-party defendant Terrence P. Brewer individually on the third party plaintiffs' complaint.
Robert Hale, State Trial Referee