[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Background
The court has reviewed the trial testimony, the exhibits introduced into evidence, the plaintiffs' Trial Memorandum and the Defendant's Proposed Findings and Supporting Evidence of Defendant, Branford Builders. The court has also evaluated the credibility of the parties.
This action is basically one sounding in breach of contract, in which the plaintiffs, who were about to have a new home built, entered into a contract with the defendant under the terms of which the defendant promised to perform certain site work and to install a septic system on the land where the home was to be built. The plaintiffs claim that the defendant breached the contract by abandoning the project, by only partially completing certain portions of the contract, improperly completing other portions, and by not performing other portions at all. The plaintiffs seek return of part of the money they have already paid the defendant, reimbursement for the cost of hiring a substitute contractor to complete the job, and reimbursement for the cost of replacement topsoil and the cost to spread that topsoil (See Complaint and Plaintiffs' Trial Memorandum).
In its Amended Answer and Special Defenses and By Way of Counterclaim, the defendant denies any breach of contract and alleges that the plaintiffs breached the contract by unlawfully terminating it. The defendant seeks payment for work performed; "extras' and lost profits. CT Page 11750
(See also Defendant's Proposed Findings.).
Discussion and Findings:
On June 29, 1996, the parties entered into a written contract which provided that in consideration of total payments by the plaintiffs to the defendant in the amount of $20,827.55, the defendant would perform various items of work characterized as `Site Work' ($7,607.50) and also would install an `Engineered Septic System ($13,220.05)(Plaintiff's Exhibit 1). The plaintiffs paid the defendant $7,000.00 on that same date. The plaintiff, Steven Roth, who was serving as his own general contractor, had many years experience in the general area of construction, although not in the physical labor aspect. He is also familiar with construction contacts and is now a manager of construction projects for Yale University. The contract is silent as to any dates for completion or for any stages of the project. The plaintiffs were aware at the time the contract was signed that the defendant was not going to devote his full time to this job, inasmuch as he was working on other jobs at the same time.
The first part of the job, grubbing and stumping, including soil removal, was done by July 6, 1996, and the defendant dug the foundation hole from July 20th to July 24th. The resultant topsoil was placed on an adjacent lot owned by the defendant. He then had to wait until August 1st to continue working, because the plaintiffs incurred a scheduling delay with the concrete contractor. Between August 1st and August 9th the defendant did further excavations on the foundation hole to enlarge it so that the footings could be placed properly. It then took about four days for the footing and foundation walls to be done. At the end of August, the defendant installed the footing drains and worked on the curtain drains and placement of gravel. The defendant did not put gravel from the top of the footing drain to grade, although the specifications called for it. The defendant then back-filled and put down gravel near the garage. It was now early September, 1996.
The plaintiff, Steven Roth, testified that very frequently during July and August he remonstrated with the defendant about why he was not working or showing up at scheduled meetings, why he was not returning calls, and why he was not keeping his promises.
In spite of the plaintiffs' claimed dissatisfaction with the CT Page 11751 progress of the work and the quality of some of it, they paid the defendant an additional $5,000 on approximately September 1, 1996. When they paid the defendant this money, they did not complain to him about anything.
The plaintiffs had been aware during August that the defendant was going to be married on September 6th and that he would be away on a honeymoon for about a week. During the first week of September, including the morning of his wedding day, the defendant did some work at the site. The plaintiffs were sufficiently well disposed toward the defendant to present him with a wedding gift.
As September was drawing to a close, the plaintiffs wanted to begin putting in the septic system; they were concerned that if it got too late in the year, the ground would be frozen, thereby making it impossible to install. However, there was still plenty of time and the defendant would have needed only a couple of days to do the job.
On October 8, 1996, the plaintiffs terminated the contract in a letter from their lawyer to the defendant(Defendant's Exhibit 7). There was still some site work to be finished. About a week later the plaintiffs hired a new contractor, who eventually completed the job.
The framers were able to come in shortly after September 6th and begin framing.
The plaintiffs did not make a formal request of the defendant to return their loam which was being stored in the next lot, and when the defendant was fired, it wasn't yet time to spread the loam. The plaintiffs had their replacement contractor purchase more loam without attempting to get back their own loam from the defendant, who would not have interfered with the plaintiffs' taking it. In early November 1996, the defendant told the plaintiff, Steven Roth to take his topsoil from the place the defendant had put it.
The plaintiff, Steven Roth, testified that in 1996 he thought the defendant abandoned the job on about October 6, 1996, but that he now believes that the abandonment occurred in early September.
Although one of the chief complaints the plaintiffs have is CT Page 11752 that the defendant, by not putting gravel over the footing drains, failed to follow specifications, they decided not to have this replacement contractor put any gravel over these drains.
There was disputed testimony concerning the quality of the work done by the defendant; the court finds that although there were some justifiable complaints by the plaintiffs, both as to workmanship and failure to communicate, there was substantial compliance by the defendant with the contract requirements.
On the other hand, the plaintiffs breached their contract with the defendant by terminating the contract and ordering the defendant off the job site. This occurred about a week prior to the October 8, 1996 termination letter from the plaintiffs, which stated that the plaintiffs were terminating the contract. This was just about the time the defendant was going to resume working on the site.
The defendant testified that he believes he is entitled to $7,607.50 which was the contract price for the site work, less $1,107.50 credit for work not completed, plus $6,000.00 for extras, a total of $12,500.00, less the $12,000.00 he has already been paid, a net of $500.00. He has provided no documentation such as time records to support the claim for extras. The defendant didn't bill the plaintiffs for the extras. He also testified that his profit on the entire job would have bene $8,000.00, and is claiming loss of profits in that amount, but there was a paucity of evidence as to how that $8,000 figure was arrived at.
Applicable Law:
 "The general rule to be applied in construction cases is that the failure to make progress payments is a breach of contract so substantial as to render the contract nugatory." Silliman Co. v. S. Ippolito Sons, Inc., 1 Conn. App. 72, 75 (1983).
It follows from the above case that in order for the plaintiffs to be justified in terminating their contract with the defendant, they would have to establish a substantial breach. This they have not done.
"Recission is the proper remedy for failure to do that which is basic to the contractual obligation of a party CT Page 11753 to a contract." Silliman Co. v. S. Ippolito Sons, Inc., supra.
The plaintiffs attempt to rescind or terminate this contract was unavailing because of their failure to prove that the defendant failed to perform the basics of his contractual obligation.
Therefore the plaintiffs' ineffectual attempt to terminate the contract and their ordering of the defendant off the job constituted a breach of contract.
The defendant claims a loss of profits.
 In general, when a party is awarded damages based on a breach of contract, he is entitled to compensation that will place him in the same position he would have occupied had the contract been fully performed. ------. It is well settled that this measure of damages requires a factual inquiry to determine the loss the plaintiff has sustained in the form of (1) expenditures incurred toward performance of the contract, and (2) the lost profit that would have been realized had the entire contract been performed. Hilson v. Kapetan, Inc., 25 Conn. App. 529, 533-534 (1991).
 It is axiomatic that a claimant seeking damages bears the burden of proving with reasonable certainty, those damages sustained as a result of his injury. Fox v. Mason, 189 Conn. 484, 488, (1983).
 "Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money, with reasonable certainty." See Lawson v. Whitey's Frame Shop, 241 Conn. 678, 689
(1997).
The defendant has not established a basis for the court to make a reasonable estimate of his loss of profits.
The evidence of the value of the work done by the defendant including extras, backs sufficient detail to prove the full amounts sought.
Conclusions:
CT Page 11754
The plaintiffs have failed to prove by a fair preponderance of the evidence that the defendant abandoned the project or that the defendant breached the contact (First Count).
They have proved that the defendant has been paid more money than he is entitled to. (Second Count).
They have failed to prove that the defendant has breached any express or implied warranties. (Third Count).
They have failed to prove that the defendant has withheld any of their topsoil. (Fourth Count).
The issues raised in the Fifth Count concerning alleged fraudulent transfers are no longer at issue.
With respect to the defendant's By Way of Counterclaim, the defendant has proved by a fair preponderance of the evidence that the plaintiffs breached the contract thereby damaging the defendant.
The court finds that the defendant is entitled to $5,000.00 for work performed, $1,000.00 for extras and nothing for loss of profits. Inasmuch as the defendant has already been paid $12,000.00, the plaintiffs are awarded $6,000.00, which represents the amount they have overpaid the defendant ($12,000.00 - $6,000.00)
No attorney's fees are awarded to either party
Walsh, J.