[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
This matter comes before the court on the plaintiff's motion for summary judgment (#197) on liability alone regarding a general contractor's alleged breach of contract. The plaintiff relies on Practice Book § 17.50[1] which provides for summary judgment on liability alone although there remains a genuine issue as to damages. The plaintiff moves on the ground that no genuine issue of material fact exists that the general contractor failed to properly install or cause to be installed vinyl flooring in the plaintiff's office space thereby breaching the building agreement. For the reasons stated below, the court grants the plaintiff's motion for summary judgment on count five because no genuine issue of material fact exists regarding the defendant's breach of the contract. CT Page 14230
 I. PROCEDURAL HISTORY
On August 21, 1996, the plaintiff, Dr. Riccardo I. Ambrogio, D.M.D., filed a seven count complaint naming as defendants his landlord, the general contractor and the flooring subcontractor.[2] The plaintiff withdrew its complaint as to the landlord and the subcontractor upon respective settlement agreements, leaving only count five against the general contractor, Paul DiMascio Construction, Co. (DiMascio). On September 15, 1996, DiMascio timely filed an answer and special defenses.
On November 19, 1999, the court, Wollenberg, J., granted DiMascio's motion in limine and precluded any evidence regarding the plaintiff's lost profits, the only damages the plaintiff sought against DiMascio. The plaintiff's motion to reargue was denied by the court, Wollenberg, J., on December 17, 1999. On January 6, 2000, the plaintiff filed an interlocutory appeal (#190) from the trial court order rendered in conjunction with the motion in limine. DiMascio's motion to dismiss the appeal was granted on March 13, 2000. Finally, the plaintiff's petition for certification for appeal from the Appellate Court was denied on May 4, 2000. As a result, no court has reached the merits of the claim as to DiMascio's liability on the building agreement, which thus remains the sole issue currently before the court.
On July 25, 2000, the plaintiff filed a motion for summary judgment on liability alone accompanied by a memorandum of law. In support thereof, the plaintiff submitted the certified transcript of the deposition of Michael Crowl, the former vice president of DiMascio, including the exhibits marked at the deposition (Exhibits 1-16), DiMascio's responses to the plaintiff's first set of interrogatories and requests for production of documents and the affidavits of the plaintiff, Frank A. Soucy for Materials Testing, Inc. and Richard C. Boggs, P.E. On September 28, 2000, the plaintiff submitted a reply memorandum of law in support of his motion.
DiMascio filed an objection to the motion on October 2, 2000. DiMascio submitted nothing by way of counteraffidavit or other evidentiary material to support its arguments or to refute those facts averred in the plaintiffs affidavits and other documentary evidence submitted in support of the motion for summary judgment. The court heard oral argument on October 2, 2000, and now issues this memorandum of decision.
 II. FACTS
The pleadings, affidavits and other documents presented on the motion CT Page 14231 reveal the following undisputed facts relevant to the defendant's liability. The plaintiff is an oral and maxillofacial surgeon licenced in the state of Connecticut. He leases space for his practice in the office building located at 30-40 Beaver Road, Wethersfield, Connecticut, where he examines and performs oral surgery on patients. On September 11, 1992, the plaintiff entered into a building agreement with DiMascio for renovations and improvements to the leased office space to make it suitable for the examination and surgery of patients. (See Affidavit of Riccardo I. Ambrogio [Plaintiff's Affidavit], July 25, 2000, ¶ 3; Plaintiffs Exhibit A, building agreement; Deposition of Michael Crowl [Crowl Deposition], March 23, 1999, p. 16-18.)
At all relevant times, the plaintiff communicated with the project manager, Michael Crowl, the vice president of DiMascio. Crowl was responsible for managing the construction job, as well as hiring and supervising the subcontractors. DiMascio completed construction on approximately November 17, 1992, at which time the plaintiff paid DiMascio over $80,000, fulfilling his obligation under the contract. The plaintiff then opened his office.
By the end of 1992, the plaintiff noticed moisture and glue seeping through the joints of the sheet vinyl flooring, which created an unpleasant smell and causing the floor to be slippery, warped, bubbled and discolored. (See Affidavit of Riccardo I. Ambrogio, D.M.D. [Plaintiffs Affidavit], July 25, 2000, ¶ 6; Crowl Deposition, pp. 84-86; Plaintiffs Motion for Summary Judgment, July 25, 2000, p. 5; Affidavit of Richard Boggs [Boggs Affidavit], July 24, 2000, ¶ 3.) These problems were predominantly in the northern portion of the office, especially in the surgical suite which included two operating rooms where DiMascio's flooring subcontractor, Z-Florz, Inc. (Z-Florz), had installed a specialized "Smaragd" sheet vinyl flooring per the building agreement's specifications. After the plaintiff contacted Crowl and requested that the problems be fixed, DiMascio and Z-Florz visited the office several times attempting to cure the defects. Although the problems continued to worsen, DiMascio and Z-Florz stopped visiting the office and, ultimately, the floor was never completely repaired.
The plaintiff alleges in count five that DiMascio, as the general contractor, breached its contractual duty to supervise, inspect and direct the proper installation of the flooring resulting in foreseeable damages to the plaintiff. The plaintiff moves for summary judgment on the grounds that no genuine issue of material fact exists as to (1) the building agreement between DiMascio and the plaintiff, (2) the plaintiff's performance of his obligations under the contract and (3) DiMascio's breach by failing to install or cause to be installed Smaragd sheet vinyl flooring in accordance with the manufacturer's instructions. CT Page 14232
In opposition, DiMascio argues that genuine issues of material fact exist as to liability. Specifically, it attempts to refute the plaintiff's interpretation of deposition statements submitted to support the plaintiff's allegation that DiMascio breached the building agreement. DiMascio also argues that because the plaintiff has withdrawn his claims against the landlord and the subcontractor after alleging they were both the proximate cause of his damages, issues of fact exist with regard to who was responsible for the floor's condition after installation. Finally, DiMascio argues there is no "genuine issue as to damages." Specifically, it argues that there are no provable damages because the court precluded all evidence of the only damages alleged and, therefore, there can be no subsequent trial as to damages pursuant to § 17-50.
 III. STANDARD OF REVIEW
"Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. (Citations omitted; internal quotation marks omitted.) Miles v.Foley, 253 Conn. 381, 385-86, 752 A.2d 503 (2000). "The test is whether a party would be entitled to a directed verdict on the same facts." Sherwoodv. Danbury Hospital, 252 Conn. 193, 201, 746 A.2d 730 (2000). "Summary judgment procedure, generally speaking, is an attempt to dispose of cases in a manner which is speedier and less expensive for all concerned than a full-dress trial." Orenstein v. Old Buckingham Corp., 205 Conn. 572,574, 534 A.2d 1172 (1987).
While "the moving party has the burden of presenting evidence that shows the absence of any genuine issue.of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue." Haeche v. Kissner, 229 Conn. 213, 217,640 A.2d 89 (1994). "It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation CT Page 14233 marks omitted.) Maffucci v. Royal Park Ltd. Partnership, 243 Conn. 552,554-555, 707 A.2d 15 (1998). To defeat the motion, the defendant "must recite specific facts which contradict those stated in [the plaintiff's] affidavits and documents." (Internal quotation marks omitted.)Connecticut National Bank v. Great Neck Development, 215 Conn. 143, 148,574 A.2d 1298 (1990). "If [the defendant's] affidavits and other supporting documents are inadequate, then the court is justified in granting the summary judgment, assuming that [the plaintiff] has met [his] burden of proof." (Internal quotation marks omitted.) AssociatesFinancial Services of America, Inc. v. Sorenson, 46 Conn. App. 721, 732,700 A.2d 107, cert. dismissed, 245 Conn. 168, 710 A.2d 769 (1997).
 IV. DISCUSSION
"The key elements of a breach of contract action are: (1) the formation of an agreement; (2) performance by one party; (3) breach of the agreement by the other party and (4) damages." Kennedy v. Westledge, Superior Court, judicial district of New Haven at Meriden, Docket No. 262278 (March 12, 1999, Beach, J.). It is uncontested that a contract existed between the plaintiff and DiMascio and that the plaintiff performed by timely paying the full amount agreed to by the parties. (See Crowl Deposition, p. 24.) Both parties also have acknowledged the floor's condition after installation. Therefore, the only remaining issue is the defendant's alleged breach of its duty under the building agreement.
"Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law."Tallmadge Bros. v. Iroquois Gas Transmission System, 252 Conn. 479, 495,746 A.2d 1277 (2000). Here, the terms of the agreement are uncontested and unambiguous; therefore, their meaning is to be ascertained from the document itself as a matter of law. See Foley v. Huntington Company,42 Conn. App. 712, 728, 682 A.2d 1026, cert. denied, 239 Conn. 931,683 A.2d 397 (1996). Pursuant to the building agreement, DiMascio contracted to "secure and provide as herein set forth all the materials necessary and perform or cause to be performed all work necessary for the completion of improvements to the Premises in accordance with the drawings attached hereto as Exhibit A and in accordance with the . . . Specifications attached hereto as Exhibit B . . . [and that] [a]ll work [would] be done in a good and workmanlike manner, using experienced labor and first-quality materials as per the specifications." (Plaintiffs Affidavit, Exhibit 1, building agreement, p. 1, Art. 2.) In his deposition, Crowl testified that he understood this to include the hiring of subcontractors. (See Crowl Deposition, pp. 22-23.) CT Page 14234
The contract provided that the work was to be completed in such manner as to comply fully with the specifications prepared by the plaintiff's architect, that were given to Crowl and incorporated into the building agreement. (See Plaintiff's Exhibit A, building agreement, p. 3, Art. 7.1; Plaintiff's Exhibit B, specifications; Crowl Deposition, pp. 25, 53.) The contract also stated that the contractor had examined the premises and determined that the improvements referred to therein would be completed consistent with the said specifications. (See Plaintiffs Exhibit A, building agreement, p. 1.) Crowl echoed these requirements in his deposition stating that it was DiMascio's "responsibility to build the office per the specifications" and that he believed they were doing so by delegating the floor installation to a competent contractor. (See Crowl Deposition, p. 65-66.) Crowl also confirmed that he had received a copy of said specifications. (See Crowl Deposition, p. 25.)
The specifications required that Smaragd vinyl flooring be installed in the two operating rooms and that the manufacturer's installation instructions be followed to ensure the full limited five-year warranty. (See Plaintiff's Exhibit B, specifications,09000-Finishes, p. 8.) Based on the company's prior experience with such flooring, Crowl hired Z-Florz as the subcontractor to install the Smaragd vinyl sheet flooring. (See Crowl Deposition, p. 36.) DiMascio and Z-Florz entered into a purchase order agreement dated October 17, 1992; see Crowl Deposition, p. 44-47; Crowl Deposition, Exhibit 5, purchase order; which also specifies that the flooring shall be installed as per the specifications and that the sheet vinyl flooring shall be "Smaragd" vinyl sheet flooring. (See Crowl Deposition, Exhibit 5, purchase order.)
The manufacturer's instructions clearly require that, prior to installation of the Smaragd vinyl sheet flooring, the installer determine whether the concrete slab is dry. The instructions recommend procedures for testing the moisture of the slab. (See Crowl Deposition, Exhibit 10, installation instructions, Moisture Conditions, p. 1.) The testimony reflects that the only preparation performed by Z-Florz was some "flashing" to level out some deviations in the surface of the concrete. (See Crowl Deposition, p. 40.) When asked whether Z-Florz tested the concrete slab in any way, Crowl replied, "Not to my knowledge."[3]
(Crowl Deposition, p. 40.) When asked for the dates and results of any tests done on the slab, DiMascio answered, "There were none done." (Crowl Deposition, Exhibit 15, DiMascio's Answers to Plaintiffs First Set of Interrogatories, August 27, 1998, ¶ 5.) When asked further for the name of any individual who surveyed, tested, or otherwise evaluated the condition of the slab prior to installation, DiMascio answered, "None." (Id., ¶ 8) It is also significant that DiMascio was at the site ninety percent of the time while Z-Florz was installing the flooring. (Crowl Deposition, p. 39.) CT Page 14235
Crowl testified that "[i]t became quickly apparent to DiMascio Construction that a test wasn't performed for moisture after receiving the installation instructions from the architect. With all probability, that was probably the cause, hydrostatic pressure or moisture content within the slab that didn't allow the adhesives to adhere." (Crowl Deposition, p. 88.) Crowl stated that Z-Florz agreed to perform repairs until Crowl asked them if they performed the test specified in the instructions. Z-Florz replied, "I don't think so, but I'll find out," after which Crowl never heard from them again. (Crowl Deposition, pp. 88-89.)
The installation instructions also explain that "[c]oncrete subfloors that occur in contact with the earth . . . require a damp-proof moisture membrane from beneath, prior to installation of Smaragd. . . ." (Crowl Deposition, Exhibit 10, installation instructions, p. 1.) The plaintiffs concrete subfloor was the same type as that mentioned in the manufacturer's instruction. (See Crowl Deposition, pp. 60-61.) Crowl was not aware of whether Z-Florz or DiMascio performed any test prior to the installation of the Smaragd vinyl sheet flooring to determine the existence of the necessary "damp-proof moisture membrane." (See Crowl Deposition, p. 61.)
The absence of a moisture membrane is evidenced in the affidavit of Frank A. Soucy[4], the president of Materials Testing, Inc. (Material Testing), who was asked by the plaintiff to conduct tests on the floor. (See Plaintiffs Affidavit, ¶ 9; Affidavit of Frank Soucy [Soucy Affidavit], July 24, 2000, ¶¶ 4-5.) In 1993, Material Testing tested the moisture content under the floor in operating room two and found "a very high reading" for moisture content. (See Soucy Affidavit, ¶ 4; Soucy Affidavit, Exhibit A, report of findings in 1993.) In 1996, Materials Testing was hired by Fletcher-Thompson, Inc., an engineering firm, on behalf of the plaintiff, at which time it drilled a hole through the concrete slab in operating room one[5] and found no vapor barrier and a "very high moisture emission rate." (See Soucy Affidavit, ¶ 5; Soucy Affidavit, Exhibit B, report of findings in 1996.[6])
The plaintiff also retained Richard C. Boggs, P.E.,[7] a licensed structural engineer and the manager of the Structural Engineering Department of Fletcher-Thompson, Inc., an engineering firm. (See Boggs Affidavit ¶¶ 1-2.) Based on Boggs' observations of the floor, his review of the reports prepared by Materials Testing and his professional experience; see Boggs Affidavit, ¶¶ 3-4; he concluded to a reasonable degree of certainty that the damage caused to the floor was due to water vapor transmitted through the concrete slab which moved upward from the soil underneath the slab. (See Boggs Affidavit, ¶ 5.) He also noted CT Page 14236 that the high moisture emission rate was well above the normal acceptable rate for adhesion of vinyl flooring.[8] (See Boggs Affidavit, ¶ 5.) Finally, Boggs averred that the absence of a vapor barrier exacerbated the transmission of moisture from the soil underneath the concrete slab. (See Boggs Affidavit, ¶ 5.) After reviewing the installation instructions, Boggs concluded that following the recommendations therein "should have detected the excessive moisture emitting from the concrete slab and would have alerted a competent contractor to the fact that the concrete slab was unsuitable for the installation of the Smaragd sheet vinyl." (Boggs Affidavits ¶ 6.)
DiMascio contracted per the building agreement to perform and cause to be performed all the work necessary for the completion of improvements in accordance with the drawings and specifications attached to the building agreement, in a good and workmanlike manner. (See Plaintiffs Exhibit A, building agreement, p. 1. Art. 2.) Crowl stated that it was his responsibility to supervise the work of the subcontractors as per the building agreement, which states: "Contractor shall supervise construction as would an architect retained by owner to do so." (Crowl Deposition, pp. 26-27; Plaintiff's Exhibit A, building agreement, p. 4, Art. 7.5.) Moreover, Crowl stated that he did not "check with Z-Florz during the construction to make sure that they had obtained the installation instructions from the manufacturer and were complying with [them]." (Crowl Deposition, p. 66.)
DiMascio argues that a genuine issue of material fact exists as to the proximate cause of the condition of the floor and the damages resulting therefrom, but presented no evidence in support of that contention. DiMascio argues that in the original complaint, and in an application for prejudgment remedy, the plaintiff claimed that the property owner and the flooring subcontractor proximately caused the condition. These arguments do not substantively address the plaintiffs allegations concerning DiMascio's breach of the contract. Moreover, "our practice and pleading allow alternative and inconsistent pleading." Shatz v. NortheastIndustries Services, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 300265 (March 2, 1987, Noren, J.) (2 CSCR 381, 382); Practice Book § 10-25 ("The plaintiff may claim alternative relief, based upon an alternative construction of the cause of action.")
DiMascio also argues that genuine issues of material fact exist as to whether Michael Crowl admitted that the flooring contractor failed to test for moisture. DiMascio contests the plaintiff's interpretation of Crowl's reply when asked if he knew whether Z-Florz tested the concrete slab in any way. Crowl replied, "Not to my knowledge that they tested the slab." (Crowl deposition, p. 40, line 21.) DiMascio claims that Crowl CT Page 14237 merely stated he did not know whether such tests were performed, whereas the plaintiff argues that Crowl admitted that neither DiMascio nor Z-Florz tested the concrete slab before installing the floor. DiMascio fails to submit a counteraffidavit or any other evidence in support of its argument.
Generally, "[t]he resolution of conflicting factual claims falls within the province of the trial court." Wilson v. Kapetan, Inc.,25 Conn. App. 529, 533, 595 A.2d 369 (1991). Here, the factual claims are not in conflict. DiMascio has failed to submit an affidavit containing conflicting facts and merely challenges the plaintiffs interpretation of Crowl's deposition testimony. "While the court must view the inference to be drawn from the facts in the light most favorable to the party opposing the motion, . . . a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." (Citations omitted; internal quotation marks omitted.) NorseSystems, Inc. v. Tingley Systems, Inc., 49 Conn. App. 582, 591,715 A.2d 807 (1998). In the absence of any such affidavit, the court finds that the foregoing evidence sufficiently reflects that neither DiMascio nor Z-Florz tested or prepared the concrete slab prior to the installation of the floor. (Crowl Deposition, p. 40, 61-62; Crowl Deposition, Exhibit 15, DiMascio's Answers to Plaintiffs First Set of Interrogatories, August 7, 1998, ¶¶ 5, 8; Crowl Deposition, Exhibit 16, Plaintiffs Supplemental Compliance with Plaintiffs Interrogatories and Request for Production, December 16, 1998, No. 6.) Accordingly, no genuine issue of material fact exists in this regard.
DiMascio also disputes that Crowl ever gave Gary Guiliano of Z-Florz a copy of the specifications, claiming that Crowl's deposition statement reflected uncertainty as to whether he had done so. Looking at the statement in context, Crowl stated, "I can't recall if he [Guiliano] had taken a copy of these. I do believe that I had given him a copy of the specs so that he could formulate pricing on the carpeting, VCT and the Smaragd vinyl flooring." (Crowl Deposition, p. 57.) Crowl also states that he instructed Z-Florz to follow the specifications, which specify using Smaragd vinyl flooring and directs the installer to follow the manufacturer's instructions therein. (See Crowl Deposition, p. 60.)
The defendant fails to recite specific facts or provide evidence of facts that contradict those stated in the deposition. See ConnecticutNational Bank v. Great Neck Development, supra, 215 Conn. 148. DiMascio merely disagrees with the plaintiffs interpretation of Crowl's statement. "While . . . deposition testimony is not conclusive as a judicial admission; General Statutes § 52-200; it is sufficient to support entry of summary judgment in the absence of contradictory competent affidavits that establish a genuine issue of material fact. See CT Page 14238 Practice Book § [17-45]." Collum v. Chapin, 40 Conn. App. 449, 450
n. 2, 671 A.2d 1329 (1996). The court finds the plaintiffs interpretation more than reasonable where Crowl states, "I do believe that I gave him a copy of the specs. . . ." (Crowl Deposition, p. 57.) In the absence of any counteraffidavit, the court finds no genuine issue as to whether Crowl gave a copy of the specifications to Guiliano. Furthermore, the issue as to whether Crowl personally gave Z-Florz a copy of the specifications does not make a difference in determining DiMascio's liability and, therefore, is not a material fact. See Hammer v.Lumberman's Mutual Casualty Co., 214 Conn. 573, 578, 573 A.2d 699 (1990) ("A `material' fact has been defined adequately and simply as a fact which will make a difference in the result of the case.")
The court finds, based on the evidence presented in support of the motion, and in the absence of any counteraffidavits or documentary evidence submitted in opposition, that DiMascio breached its contractual duty under the building agreement. The plaintiff submitted sufficient proof through affidavits and documentary evidence which reveal that DiMascio owed the plaintiff a duty to supervise and inspect the improvements made on the plaintiffs property. The building agreement required that the improvements be made in a good and workmanlike manner and in accordance with the specifications attached thereto. The specifications explicitly required that Smaragd vinyl sheet flooring be installed per the manufacturer's installation instructions. The deposition testimony revealed that DiMascio failed to properly supervise, inspect and install or cause to be installed the flooring per the instructions, thereby breaching its duty under the building agreement. The evidence further reveals that the condition of the flooring was the result of improper installation. Accordingly, the court finds that DiMascio breached its contractual duty to properly install or cause to be installed the vinyl sheet flooring per the installation instructions.
Finally, DiMascio argues that the court has precluded evidence as to the only damages the plaintiff is seeking, loss of business income. DiMascio contends that because the plaintiff admits there are no provable damages, there can be no subsequent trial to determine such. Practice Book § 17-50 states in relevant part: "A summary judgment, interlocutory in character, may be rendered on the issue of liability alone, although there is a genuine issue as to damages. In such case, the [court] shall order an immediate hearing . . . to determine the amount of the damages." Practice Book § 17-50.
In the motion for summary judgment, the plaintiff acknowledges that "the [c]ourt has precluded any evidence of the only damages . . . sought against DiMascio" and therefore, "a grant of summary judgment in [the CT Page 14239 plaintiffs] favor on DiMascio's . . . liability will not require the hearing on damages contemplated by the later sentences of . . . § 17-50." (Plaintiffs Motion for Summary Judgment, p. 21.) The plaintiff does not admit, as DiMascio contends, that there are no provable damages. In fact, the plaintiffs continued efforts to reverse the trial court's order clearly show otherwise. The plaintiff appealed the order of the court, and upon dismissal of such appeal, petitioned the Supreme Court for certification for appeal from the Appellate Court. Ultimately, the plaintiffs petition was denied. The plaintiff requests summary adjudication on liability alone "to make the judgment final and the case ripe for appeal." (Plaintiff's Motion for Summary Judgment, p. 22.)
"It is well established that the appellate courts in this state do not have jurisdiction to entertain appeals not taken from final judgments. See General Statutes § 52-263. . . ." (Citation omitted.) Lord v.Mansfiled, 50 Conn. App. 21, 25, 717 A.2d 267, cert. denied, 247 Conn. 943,723 A.2d 321 (1998). "This situation is similar to that in which a judgment is entered as to liability only, without reference to damages. Such a judgment, interlocutory in character, is not an appealable final judgment." Sasso v. Aleshin, 197 Conn. 87, 90, 495 A.2d 1066 (1985); see also Aetna Casualty and Surety Co. v. Pizza Conn., Inc., 55 Conn. App. 488,490 n. 2, 740 A.2d 408 (1999) (court refused to review breach of contract action awaiting a determination of damages because not yet a final judgment). Here, because the issue of damages already has been determined, adjudication of liability is necessary to obtain a final judgment, the absence of which would present a jurisdictional defect on appeal. See Lord v. Mansfield, supra, 25.
 V. CONCLUSION
Pursuant to the foregoing, the plaintiffs motion for summary judgment on count five is granted as to liability as a matter of law because there exist no genuine issues of material fact concerning the defendant's breach of its duty under the building agreement. It is so ordered.
BY THE COURT
 ROBERT B. SHAPIRO JUDGE OF THE SUPERIOR COURT